22079

NORTH CHARLESTON LAND CORPORATION, a Maryland Corporation, Plaintiff-Respondent, v. The CITY OF NORTH CHARLESTON, a municipal corporation, and John E. Bourne, Jr., Pete B. Adams, Jr., R. E. Zipperer, Oatman C. Gerald, Patsy W. Hughes, James V. Edwards, Robert A. Ankersen, the Mayor and the City Council of the City of North Charleston, Edward W. Trescot and John Doe, a person unknown, the Treasurer of the City of North Charleston, Defendants-Appellants.

(316 S. E. (2d) 137)

Supreme Court

*James E. Gonzales* of *Gonzales & Gonzales,* of North Charleston, *for defendants-appellants.*

*Reese I. Joye, Jr.,* and *J. Stanley Claypoole* of *Joye, Claypoole & Kefalos,* and *John Bradley, III,* North Charleston, *for plaintiff-respondents.*

*Robert E. Lyon, Jr.,* Columbia, *amicus curiae for The Municipal Ass'n of South Carolina.*

April 9, 1984.

LITTLEJOHN, Justice:

This action was commenced by North Charleston Land Corporation, a taxpayer of the City of North Charleston, against the City of North Charleston and various officials collectively referred to as the City. The Complaint seeks a refund of $264.76, municipal business license tax, paid under protest. Additionally, the taxpayer seeks to have the City's license tax ordinance declared unconstitutional. The issues were referred to a Master in Equity who recommended the dismissal of the complaint. The taxpayer appealed to the Circuit Court which rejected the Master's recommendation, ordered a refund and held the ordinance unconstitutional. We are of the opinion that the Master was correct and reverse the Order of the Special Circuit Judge.

The taxpayer is a Maryland Corporation; it maintains no office and has no employees in South Carolina. It owns real estate in the City of North Charleston from which rents and lease proceeds are mailed to its Baltimore headquarters.

In 1974, the City hired Governmental Consultants, Inc., (Consultants), to aid in preparing a business license ordinance. Businesses were classified according to major groups

in the Standard Industrial Classification (SIC) manual of the United States Government Printing Office, 1972. Each business is required to utilize the appropriate SIC number on Federal Income Tax Returns. Internal Revenue Service statistics on nationwide income published periodically were used to find the ratio of net income or gross income for each SIC group to be included in the ordinance. The ratios were arranged and plotted in ascending order and major groups were placed in rate classifications by division into equal increments of ratio, disregarding the upper ratios which made the curve irregular. This procedure resulted in those major groups having the same range of ability to pay being taxed at the same rate. The rate of each classification was set by City Council with a uniform variation between classes. Businesses subjected to special State law requirements or limitations, and those with other controlling factors as determined by City Council were placed in the last separate classification for each business group in order to avoid administrative burdens inherent in a multiplicity of rate classifications.

The ordinance grouped businesses into classes. All businesses within a given classification were treated alike.

The enacted ordinance was substantially that proposed by the Consultants. There were some revisions:

(1) license fees based on "capital invested" was deleted;
(2) eight, rather than seven, classes were created by splitting one of the proposed classes;
(3) the three largest manufacturing concerns in the City, West Virginia Pulp and Paper Company, Raybestos Manhatten Company and Goer Manufacturing Company, were placed in a classification known as "Manufacturers of Durable Goods"; (this classification pays no tax); and
(4) the classification "Miscellaneous Manufacturing" was changed to read, "Miscellaneous Manufacturing of Non-Durable Goods".

The business license ordinance under attack was enacted in 1975. After the ruling of the Special Circuit Judge, the ordinance was repealed. The theory behind the classification system is to utilize nationwide statistics on business income to determine profit-making ability in order that businesses with similar paying potentials be placed in the same rate class

unless there is some additional overriding state or local consideration.

The unnecessarily long record, more than 1,400 pages, describes in minute detail the process followed by the Consultants in developing its proposal. It includes factors considered by council in making amendments. The fact that some of the figures relied upon were not reduced to a mathematical certainty and the fact that some of the data relied upon is not entirely accurate is not fatal to the ordinance.

We are of the opinion that council adopted a reasonable approach. It is not contested but that the City may enact a business license ordinance. A comparison chart is reproduced in the Master's Report. It shows that businesses within the City under the ordinance now attacked generally pay a lower license fee than similar businesses in eleven other comparable municipalities in South Carolina.

Class 8 consists of businesses whose tax rates were governed by State statutes. Classes 1 thru 7 have a rate spread between classes, in ascending order of fifteen and twenty percent. Total spread for the lowest class (Class 1) to the highest class (Class 7) was about two and one-half times. The $264.76 sought to be recovered results from the taxpayer's gross income of $156,504.

The ordinance places the three largest manufacturing businesses within the City in Class 8 and exempted them from payment of a license fee. It is the contention of the taxpayer that this violates the equal protection clause of the state and federal constitutions because of the exclusion of an entity or entities of a taxing scheme without a rational basis. The basis of the exemption was the relatively low demand for specified municipal services as well as substantially higher ad valorem tax assessment ratio. A 9.5 assessment ratio was applied to industrial property as compared to a 5.7 assessment ratio applied to commercial property at the time of the ordinance enactment. We held in *United States Fidelity and Guaranty Company v. City of Spartanburg*, 263 S. C. 169, 209 S. E. (2d) 36 (1974) that it was not inappropriate for the City to consider services rendered to the taxpayer and the fact that the taxpayer paid little, if any, ad valorem taxes. By a similar token, the City may consider the fact that a taxpayer pays much ad valorem taxes and requires little in the way of services.

On this appeal, the City submits several allegations of error entitling it to a reversal. It is argued that the trial judge erred in substituting judicial judgment for legislative judgment. We agree and reverse on this basis.

An ordinance is a legislative enactment and is presumed to be constitutional. The burden is upon the taxpayer to prove unconstitutionality beyond a reasonable doubt. The burden requires the attacker to "... negative every conceivable basis which might support it." *Lehnhausen v. Lake Shore Auto Parts Company*, 410 U.S. 356, 364, 93 S. Ct. 1001, 1006, 35 L. Ed. (2d) 351 (1973) (quoting *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S. Ct. 406, 408, 84 L. Ed. 590 (1940)). The taxpayer has failed to meet this burden of proof. Constitutional arbitrariness has not been shown. The contention that the ordinance is unreasonable, oppressive and violative of the statutes and constitutions of this State and of the United States is found to be without merit.

The judgment of the trial court is reversed. Case is remanded to the Circuit Court for the entry of judgment in favor of the City.

Reversed.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.