23193

CENTAUR, INC., Appellant v. RICHLAND COUNTY, South Carolina, Respondent.

(391 S.E. (2d) 165)

Supreme Court

*W. Gaston Fairey* and *J. Christopher Mills, Fairey & Parise, P.A.,* Columbia, *for appellant.*

*C. Dennis Aughtry,* Columbia, and *Benjamin W. Bull,* Phoenix, Ariz., *for respondent.*

Heard Nov. 13, 1989.

Decided April 16, 1990.

CHANDLER, Justice:

This appeal by Centaur, Inc. challenges the constitutionality of Richland County's Ordinance regulating sexually oriented businesses. On County's motion for involuntary nonsuit, Circuit Court held the Ordinance valid.

We affirm.

# I. BACKGROUND

## A. THE ORDINANCE

The Ordinance was enacted by Richland County Council on August 19, 1987, and amended September 1, 1987.[1] Prior to its adoption, six public hearings were conducted at which numerous citizens testified. In addition, County Council considered adult property use studies and reports from the cities of Indianapolis, Los Angeles, Cleveland, Phoenix, Oklahoma City, and Austin. These studies indicate that adult businesses have a negative effect on the value of nearby property and are associated with higher crime rates.

As amended, the Ordinance regulates "sexually oriented businesses," defined to include adult bookstores. Richland County Code § 8A-2(16). "Adult bookstore" is a commercial establishment which, as one of its "principal business purposes," sells material depicting or describing "specified sexual activities." § 8A-2(2).

The Ordinance requires that all sexually oriented businesses be located within a C-3 (General Commercial) zoning district and at least 1000 feet from a church, school, park, residential area, or another sexually oriented business. § 8A-12(b)-(d). Non-conforming uses are permitted to continue for a two-year amortization period commencing on August 1, 1987. § 8A-12(h).

The Ordinance also requires sexually oriented businesses to obtain a license from the County Zoning Administrator. Within thirty days of receipt of an application the Zoning Administrator must issue the license unless he finds one or more enumerated circumstances to be true, for example, that the applicant has failed to provide information "reasonably necessary" for issuance of the license. § 8A-5. The Ordinance further provides for suspension or revocation of a license under certain specified violations, §§ 8A-9, 8A-10.

Finally, the Ordinance regulates the internal configuration of sexually oriented businesses which exhibit adult films or videocassettes in viewing rooms of less than 150 feet of floor space, commonly referred to as "peep booths." § 8A-14.

---

[1] The Ordinance, as amended, is codified as Richland County Zoning Ordinance, Article 8A. *See* Appendix.

Among the requirements, the interior of the premises must be configured so that there is an unobstructed view of every area. § 8A-14(5).

## B. CENTAUR'S BUSINESSES

Centaur leases two buildings on Two Notch Road in Richland County in which it operates the Chateau and Foxes X adult bookstores. Both businesses are located within 1000 feet of a church or residential area. Thus, Centaur will be required to either relocate the bookstores or bring them into conformity with the Ordinance.

## C. THIS LITIGATION

Centaur commenced this action challenging the constitutionality of the Ordinance on several grounds:

(1) The Ordinance is an unconstitutional exercise of zoning power beyond that delegated to the County by enabling statutes.

(2) The locational provisions violate the First Amendment in that they do not provide reasonable alternative avenues of communication.

(3) Certain licensing provisions violate the First Amendment in that they are not narrowly tailored to serve the County's interest.

(4) The two-year amortization provision is an unconstitutional taking of property.

(5) The Ordinance is unconstitutionally vague.

Circuit Court rejected these contentions and upheld the Ordinance in its entirety.

## D. BURDEN OF PROOF

As with other legislative enactments, ordinances are accorded a presumption of constitutionality which the attacking party has the burden of overcoming. *Southern Bell Tel. & Tel. Co. v. City of Spartanburg*, 285 S.C. 495, 331 S.E. (2d) 333 (1985); *North Charleston Land Corp. v. City of North Charleston*, 281 S.C. 470, 316 S.E. (2d) 137 (1984); *Rush v. City of Greenville*, 246 S.C. 268, 143 S.E. (2d) 527 (1965). Our decisions have generally applied this presumption even when an ordinance is challenged on First Amendment grounds. *See Thomson Newspapers, Inc. v. City of Florence*,

287 S.C. 305, 338 S.E. (2d) 324 (1985); *City of Darlington v. Stanley,* 239 S.C. 139, 122 S.E. (2d) 207 (1961); *see also State v. Barrett,* 278 S.C. 92, 292 S.E. (2d) 590 (1982) (obscenity statute).

Accordingly, the burden is upon Centaur to prove the unconstitutionality of the Ordinance.

With the foregoing *BACKGROUND,* we now address the issues raised by Centaur.

## II. COUNTY'S AUTHORITY

Centaur contends that enabling statutes do not grant County the power to regulate sexually oriented businesses, specifically regarding internal configurations. We disagree.

Among those enumerated powers granted to counties by statute is one "to provide for land use and promulgate regulations pursuant thereto subject to the provisions of Chapter 7 of Title 6." S.C. Code Ann. § 4-9-30 (9) (1986). Chapter 7 of Title 6 provides in part:

> For the purposes of guiding development in accordance with existing and future needs and in order to protect, promote, and improve the public health, safety, morals, convenience, order, appearance, prosperity, and general welfare, the governing authorities of municipalities and counties may, in accordance with the conditions and procedures specified in this chapter, regulate . . . the uses of buildings, structures, and land for . . . public activities, and other purposes.

S.C. Code Ann. § 6-7-710 (Supp. 1989).

The regulation of sexually oriented businesses and their interiors, pertaining as it does to the public use of buildings, is plainly embraced by the enabling statutes. Moreover, the record clearly demonstrates that the internal configuration requirements of "peep booths" promote the public health and general welfare. *See also Wall Distributors, Inc. v. City of Newport News,* 782 F (2d) 1165 (4th Cir. 1986); *Suburban Video, Inc. v. City of Delafield,* 694 F. Supp. 585 (E.D. Wis. 1988); *Broadway Books, Inc. v. Roberts,* 642 F. Supp. 486

(E.D. Tenn. 1986). The regulation here is a proper exercise of the County's statutory authority.[2]

### III. FIRST AMENDMENT CLAIMS

Centaur's First Amendment contentions are governed by the decisions of the United States Supreme Court in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S. Ct. 2440, 49 L. Ed. (2d) 310 (1976) and *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S. Ct. 925, 89 L. Ed. (2d) 29 (1986). These decisions hold that "content-neutral" ordinances such as Richland County's,[3] designed to regulate the secondary effects of adult businesses, are properly examined and analyzed as "time, place, and manner" regulations.

### A. LOCATIONAL PROVISIONS

Centaur claims the Ordinance's locational provisions are not valid "time, place, and manner" regulations in that they do not provide reasonable alternative avenues of communication.

In *Renton, supra,* the Supreme Court specifically addressed this requirement:

> That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation. And although we have cautioned against the enactment of zoning regulations that have "the effect of suppressing, or greatly restricting access to, lawful speech," we have never suggested that the First Amendment compels the Government to ensure that adult theatres, or any other kinds of speech-related

---

[2] In its brief, Centaur contends the Ordinance's zoning provision violates uniformity requirements of the enabling statutes, S.C. Code Ann. § 6-7-720 (1976). As this issue was not raised by an exception on appeal, it will not be considered. *Reid v. Hardware Mut. Ins. Co.*, 252 S.C 339, 166 S.E. (2d) 317 (1969).

[3] Like those in *Young* and *Renton,* the Richland County Ordinance is not aimed at the content of the matter distributed or exhibited by sexually oriented businesses, but rather at the secondary effects of such businesses on the surrounding community.

businesses for that matter, will be able to obtain sites at bargain prices. In our view, the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city. . . .

475 U.S. at 54, 106 S. Ct. at 932, 89 L. Ed. (2d) at 42 (citations omitted).

Centaur concedes that, as found by the Circuit Court, there are *at least* sixteen sites on which its businesses could be relocated. Centaur presented no evidence that it was "effectively" denied a reasonable opportunity to continue the operation of its bookstores at other locations. We, therefore, sustain the constitutionality of the Ordinance's locational provisions as applied to Centaur.

## B. LICENSING PROVISIONS

Centaur next contends that certain licensing provisions fail to satisfy the requirement that they be narrowly tailored to serve the County's interest.

Specifically, Centaur argues that § 8A-5(3) vests the Zoning Administrator with unfettered discretion to deny licenses when an applicant fails to supply information "reasonably necessary" for their issuance. We disagree. The Ordinance provides the Administrator with a standard "susceptible of objective measurement," thus adequately circumscribing his discretion. *FW/PBS, Inc. v. City of Dallas*, 837 F. (2d) 1298 (5th Cir. 1988), *rev'd on other grounds*, __ U.S. __, 110 S. Ct. 596, 107 L. Ed. (2d) 603 (1990).[4]

Centaur further contends the provisions covering suspension and revocation of licenses are not narrowly tailored. These provisions, however, are "not substantially broader than necessary to achieve the [County's] interest." *Ward v. Rock Against Racism*, __ U.S. __, __, 109 S. Ct. 2746,

---

[4] The Dallas licensing scheme was held unconstitutional by the Supreme Court on grounds that it failed to provide (1) a definite time within which a licensing decision must be made and (2) an avenue for prompt judicial review of a license denial. We need not address this aspect of the Richland County Ordinance since Centaur has not preserved the issue for review. This Court will not consider a question which was neither presented to the trial court nor raised by an exception on appeal. *Knight v. Lee*, 262 S.C. 17, 202 S.E. (2d) 19 (1974).

2758, 105 L. Ed. (2d) 661, 681 (1989). We uphold their constitutionality.

## IV. AMORTIZATION PROVISION

Centaur challenges the Ordinance's two-year amortization provision as an unconstitutional taking of its property.

In *Collins v. City of Spartanburg*, 281 S.C. 212, 314 S.E. (2d) 332 (1984), we held that an amortization provision is valid if reasonable. Reasonableness is determined by "[b]alancing the public gain against the private loss. . . ." *Id.* at 214-15, 314 S.E. (2d) at 333.

A number of other courts have upheld adult-use amortization periods of varying lengths. *SDJ, Inc. v. City of Houston*, 636 F. Supp. 1359 (S.D. Tex. 1986), *aff'd*, 837 F. (2d) 1268 (5th Cir. 1988) (6 months); *Castner v. City of Oakland*, 129 Cal. App. (3d) 94, 180 Cal. Rptr. 682 (1982) (1 year); *Cook County v. Renaissance Arcade & Bookstore*, 122 Ill. (2d) 123, 118 Ill. Dec. 618, 522 N.E. (2d) 73 (1988) (6 months, with nondiscretionary 6-month extension if requested); *Town of Islip v. Caviglia*, 73 N.Y. (2d) 544, 542 N.Y.S. (2d) 139, 540 N.E. (2d) 215 (1989) (1¼ to 5¼ years); *PA Northwestern Distributors, Inc. v. Zoning Hearing Bd.*, 124 Pa. Commw. 228, 555 A. (2d) 1368 (1989) (90 days); *Northend Cinema, Inc. v. City of Seattle*, 90 Wash. (2d) 709, 585 P. (2d) 1153 (1978) (90 days). These decisions all applied the reasonableness test followed by this Court in *Collins*.

The burden is upon Centaur to prove the unreasonableness of the amortization period. *Castner, supra*. The period is presumed to be valid unless Centaur demonstrates that its loss outweighs the public gain. *Caviglia, supra; Renaissance Arcade, supra*.

Centaur patently failed to meet its burden. Although it presented some evidence of improvements to buildings from which the bookstores are operated, Centaur offered no evidence of economic loss to its businesses as, for example, cost of relocation. On the other hand, the record contains numerous studies detailing the deleterious effects that adult businesses have upon the surrounding community.

On the record before us, the two-year amortization period is reasonable as applied to Centaur.

## V. VAGUENESS

Finally, Centaur contends that the Ordinance's definition of "adult bookstore" is unconstitutionally vague, that the phrase "principal business purpose" is fatally imprecise.

We decline to address this argument since the Ordinance clearly applies to Centaur's adult bookstores.

Centaur, therefore, lacks standing to assert a vagueness challenge. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S. Ct. 2440, 49 L. Ed. (2d) 310 (1976); *see also State v. Smith*, 275 S.C. 164, 268 S.E. (2d) 276 (1980). Nor does Centaur have standing to argue that the Ordinance is vague as applied to others. Its deterrent effect on legitimate expression is not "real and substantial" and its terms are readily subject to a narrowing construction. *Young, supra; Basiardanes v. City of Galveston*, 682 F. (2d) 1203 (5th Cir. 1982).[5]

## VI. CONCLUSION

Centaur's constitutional claims are without merit; judgment of the Circuit Court is affirmed.

Affirmed.

GREGORY, C. J., and HARWELL, FINNEY and TOAL, JJ., concur.

## APPENDIX

### ARTICLE 8A. SEXUALLY ORIENTED BUSINESSES ■

### 8A-1.  Purpose and intent

It is the purpose of this ordinance to regulate sexually oriented businesses to promote the health, safety, morals, and

---

[5] We note that the term "principal business purpose" has previously survived a vagueness challenge. *Dumas v. City of Dallas*, 648 F. Supp. 1061, 1076 & n. 42 (N.D. Tex. 1986), *aff'd subnom. FW/PBS Inc. v. City of Dallas*, 837 F. (2d) 1298 (5th Cir. 1988), *rev'd on other grounds*, —U.S.—, 110 S. Ct. 596, 107 L. Ed. (2d) 603 (1990).

general welfare of the citizens of the county, and to establish reasonable and uniform regulations to prevent the continued deleterious location and concentration of sexually oriented businesses within the county. The provisions of this ordinance have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials including sexually oriented materials. Similarly, it is not the intent or effect of this ordinance to restrict or deny access by adults to sexually oriented materials protected by the First Amendment, or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market. Neither is it the intent or effect of this ordinance to condone or legitimize the distribution of obscene material. (Ord. No. 1609-87, § 1, 8-1-87)

## 8A-2. Definitions

(1) *Adult arcade* means any place to which the public is permitted or invited wherein coin-operated or slug-operated or electronically, electrically, or mechanically controlled still or motion picture machines, projectors, or other image-producing devices are maintained to show images to five (5) or fewer persons per machine at any one time, and where the images so displayed are distinguished or characterized by the depicting or describing of "specified sexual activities" or "specified anatomical areas."

(2) *Adult bookstore or adult video store* means a commercial establishment which, as one of its principal business purposes, offers for sale or rental for any form of consideration any one or more of the following:

(a) Books, magazines, periodicals or other printed matter, or photographs, films, motion picture, video cassettes or video reproductions, slides, or other visual representations which depict or describe "specified sexual activities" or "specified anatomical areas"; or

(b) Instruments, devices, or paraphernalia which are designed for use in connection with "specified sexual activities." A commercial establishment may have other principal business purposes that do not involve the offering for sale or rental of material depicting or describing "specified sexual activities" or "specified anatomical areas" and still be categorized as adult

bookstore or adult video store. Such other business purposes will not serve to exempt such commercial establishment from being categorized as an adult bookstore or adult video store so long as one of its principal business purposes is the offering for sale or rental for consideration the specified materials which depict or describe "specified sexual activities" or "specified anatomical areas."

(3) *Adult cabaret* means a nightclub, bar, restaurant, or similar commercial establishment which regularly features:

    (a) Persons who appear in a state of nudity; or

    (b) Live performances which are characterized by the exposure of "specified anatomical areas" or by "specified sexual activities"; or

    (c) Films, motion pictures, video cassettes, slides, or other photographic reproductions which are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas."

(4) *Adult motel* means a hotel, motel, or similar commercial establishment which:

    (a) Offers accommodations to the public for any form of consideration; provides patrons with closed-circuit television transmissions, films, motion pictures, video cassettes, slides, or other photographic reproductions which are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas"; and has a sign visible from the public right of way which advertises the availability of this adult type of photographic reproductions; or

    (b) Offers a sleeping room for rent for a period of time that is less than ten (10) hours; or

    (c) Allows a tenant or occupant of a sleeping room to subrent the room for a period of time that is less than ten (10) hours.

(5) *Adult motion picture theater* means a commercial establishment where, for any form of consideration, films, motion pictures, video cassettes, slides, or similar photographic reproductions are regularly shown which are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas."

(6) *Adult theater* means a theater, concert hall, auditorium,

or similar commercial establishment which regularly features persons who appear in a state of nudity or live performances which are characterized by the exposure of "specified anatomical areas" or by "specified sexual activities."

(7) *Escort* means a person who, for consideration, agrees or offers to act as a companion, guide, or date for another person, or who agrees or offers to privately model lingerie or to privately perform a striptease for another person.

(8) *Escort agency* means a person or business association who furnishes, offers to furnish, or advertises to furnish escorts as one of its primary business purposes for a fee, tip, or other consideration.

(9) *Establishment* means and includes any of the following:

  (a) The opening or commencement of any sexually oriented business as a new business;

  (b) The conversion of an existing business, whether or not a sexually oriented business, to any sexually oriented business;

  (c) The additions of any sexually oriented business to any other existing sexually oriented business; or

  (d) The relocation of any sexually oriented business.

(10) *Permittee* and/or *licensee* means a person in whose name a permit and/or license to operate a sexually oriented business has been issued, as well as the individual listed as an applicant on the application for a permit and/or license.

(11) *Nude model studio* means any place where a person who appears in a state of nudity or displays "specified anatomical areas" is provided to be observed, sketched, drawn, painted, sculptured, photographed, or similarly depicted by other persons who pay money or any form of consideration.

(12) *Nudity* or a *state of nudity* means the appearance of a human bare buttock, anus, male genitals, female genitals, or female breast.

(13) *Person* means an individual, proprietorship, partnership, corporation, association, or other legal entity.

(14) *Semi-nude* means a state of dress in which clothing covers no more than the genitals, pubic region, and areolae of the female breast, as well as portions of the body covered by supporting straps or devices.

(15) *Sexual encounter center* means a business or com-

mercial enterprise that, as one of its primary business purposes, offers for any form of consideration:

    (a)  Physical contact in the form of wrestling or tumbling between persons of the opposite sex; or

    (b)  Activities between male and female persons and/or persons of the same sex when one or more of the persons is in a state of nudity or semi-nude.

(16) *Sexually oriented business* means an adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, adult motion picture theater, adult theater, escort agency, nude model studio, or sexual encounter center.

(17) *Specified anatomical areas* means the male genitals in a state of sexual arousal and or the vulva or more intimate parts of the female genitals.

(18) *Specified sexual activities* means and includes any of the following:

    (a)  The fondling or other erotic touching of human genitals, pubic region, buttocks, anus, or female breasts;

    (b)  Sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation, or sodomy;

    (c)  Masturbation, actual or simulated; or

    (d)  Excretory functions as part of or in connection with any of the activities set forth in (a) through (c) above.

(19) *Substantial enlargement* of a sexually oriented business means the increase in floor areas occupied by the business by more than twenty-five (25) per cent, as the floor areas exist on August 1, 1987.

(20) *Transfer of ownership or control* of a sexually oriented business means and includes any of the following:

    (a)  The sale, lease, or sublease of the business;

    (b)  The transfer of securities which constitute a controlling interest in the business, whether by sale, exchange, or similar means; or

    (c)  The establishment of a trust, gift, or other similar legal device which transfers the ownership or control of the business, except for transfer by bequest or other operation of law upon the death of the person possessing the ownership or control. (Ord. No. 1609-87, § 2, 8-1-87)

## 8A-3. Classification

Sexually oriented businesses are classified as follows:

(1) Adult arcades;

(2) Adult bookstores or adult video stores;

(3) Adult cabarets;

(4) Adult motels;

(5) Adult motion picture theaters;

(6) Adult theaters;

(7) Escort agencies;

(8) Nude model studios; and

(9) Sexual encounter centers. (Ord. No. 1609-87, § 3, 8-1-87)

## 8A-4. Permit and/or license required

(a) A person commits a misdemeanor if he operates a sexually oriented business without a valid permit and/or license, issued by the county for the particular type of business.

(b) An application for a permit and/or license must be made on a form provided by the Richland County zoning [now "planning management"] department. The application must be accompanied by a sketch or diagram showing the configuration of the premises, including a statement of total floor space occupied by the business. The sketch or diagram need not be professionally prepared but must be drawn to a designated scale or drawn with marked dimensions of the interior of the premises to an accuracy of plus or minus six inches.

(c) The applicant must be qualified according to the provisions of this chapter and the premises must be inspected and found to be in compliance with the law by the health department, fire department, and building official.

(d) If a person who wishes to operate a sexually oriented business is an individual, he must sign the application for a permit and/or license as applicant. If a person who wishes to operate a sexually oriented business is other than an individual, each individual who has a ten (10) per cent or greater interest in the business must sign the application for a permit and/or license as applicant. If a corporation is listed as owner of a sexually oriented business or as the entity which wishes to operate such a business, each individual having a ten (10) percent or greater interest in the corp-

oration must sign the application for a permit and/or license as applicant.

(e) The fact that a person possesses other types of state or county permits and/or licenses does not exempt him from the requirement of obtaining a sexually oriented business permit and/or license. (Ord. No. 1609-87, § 4, 8-1-87)

## 8A-5. Issuance of permit and/or license

The Richland County zoning administrator shall approve the issuance of a permit and/or license to an applicant within thirty days after receipt of an application unless he finds one or more of the following to be true:

(1) An applicant is under eighteen (18) years of age.

(2) An applicant or an applicant's spouse is overdue in his payment to the county of taxes, fees, fines, or penalties assessed against him or imposed upon him in relation to a sexually oriented business.

(3) An applicant has failed to provide information reasonably necessary for issuance of the permit and/or license or has falsely answered a question or request for information on the applicant form.

(4) An applicant is residing with a person who has been denied a permit and/or license by the county to operate a sexually oriented business within the preceding twelve (12) months, or residing with a person whose license to operate a sexually oriented business has been revoked within the preceding twelve (12) months.

(5) The premises to be used for the sexually oriented business have not been approved by the health department, fire department, and the building official as being in compliance with applicable laws and ordinances.

(6) The permit and/or license fee required by this ordinance has not been paid.

(7) An applicant of the proposed establishment is in violation of or is not in compliance with any of the provisions of this ordinance.

(8) The permit and/or license, if granted, shall state on its face the name of the person or persons to whom it is granted, the expiration date, and the address of the sexually oriented business. The permit and/or license shall be posted in a conspicuous place at or near the

entrance to the sexually oriented business so that it may be easily read at any time. (Ord. No. 1609-87, § 5, 8-1-87)

## 8A-6. Fees

The annual fee for a sexually oriented business permit and/or license is five hundred dollars ($500.00). (Ord. No. 1609-87, § 6, 8-1-87)

## 8A-7. Inspection

(a) An applicant or permittee and/or licensee shall permit representatives of the sheriff's department, health department, fire department, zoning [planning management] department, or other county departments or agencies to inspect the premises of a sexually oriented business for the purpose of ensuring compliance with the law, at any time it is occupied or open for business.

(b) A person who operated a sexually oriented business or his agent or employee commits a misdemeanor if he refuses to permit such lawful inspection of the premises at any time it is occupied or open for business. (Ord. No. 1609-87, § 7, 8-1-87)

## 8A-8. Expiration of permit and/or license

(a) Each permit and/or license shall expire one year from the date of issuance and may be renewed only by making application as provided in section 8A-5. Application for renewal should be made at least thirty (30) days before the expiration date, and when made less than thirty (30) days before the expiration date, the expiration of the permit and/or license will not be affected.

(b) When the Richland County zoning administrator denies renewal of a license, the applicant shall not be issued a permit and/or license for one year from the date of denial. If, subsequent to denial, the Richland County zoning administrator finds that the basis for denial of the renewal permit and/or license has been corrected or abated, the applicant may be granted a permit and/or license if at least ninety (90) days have elapsed since the date denial became final. (Ord. No. 1609-87 § 8, 8-1-87)

## 8A-9. Suspension

The Richland zoning administrator shall suspend a permit and/or license for a period not to exceed thirty (30) days if he

determines that a permittee and/or licensee or an employee of a permittee and/or licensee has:

(1) Violated or is not in compliance with any section of this ordinance;

(2) Engaged in excessive use of alcoholic beverages while on the sexually oriented business premises;

(3) Refused to allow an inspection of the sexually oriented business premises as authorized by this chapter;

(4) Knowingly permitted gambling by any person on the sexually oriented business premises. (Ord. No . 1609-87, § 9, 8-1-87)

## 8A-10. Revocation

(a) The Richland County zoning administrator shall revoke a permit and/or license if a cause of suspension in section 8A-9 occurs and the permit and/or license has been suspended within the preceding twelve (12) months.

(b) The Richland County zoning administrator shall revoke a permit and/or license if he determines that:

(1) A permittee and/or licensee gave false or misleading information in the material submitted to the zoning [planning management] department during the application process;

(2) A permittee and/or licensee or an employee has knowingly allowed possession, use, or sale of controlled substances on the premises;

(3) A permittee and/or licensee or an employee has knowingly allowed prostitution on the premises;

(4) A permittee and/or licensee or an employee knowingly operated the sexually oriented business during a period of time when the permittee's and/or licensee's permit and/or license was suspended;

(5) A permittee and/or licensee or an employee has knowingly allowed any act of sexual intercourse, sodomy, oral copulation, masturbation, or other sexual conduct to occur in or on the permitted and/ or licensed premises;

(6) A permittee and /or licensee is delinquent in payment to the county or state for any taxes for fees past due.

(c) When the Richland County zoning administrator revokes a permit and/or license, the revocation shall continue for one year, and the permittee and/or licensee shall not be

issued a sexually oriented permit and/or license for one year from the date revocation became effective. If, subsequent to revocation the Richland County zoning administrator finds that the basis for the revocation has been corrected or abated, the applicant may be granted a permit and/or license if at least ninety (90) days have elapsed since the date the revocation became effective. (Ord. No 1609-87, § 10, 8-1-87)

## 8A-11. Transfer of permit and/or license

A permittee and/or licensee shall not transfer his permit and/or license to another, nor shall a permittee and/or licensee operate a sexually oriented business under the authority of a permit and/or license at any place other than the address designated in the application. (Ord. No. 1609-87, § 11, 8-1-87)

## 8A-12. Location of sexually oriented businesses

(a) Reserved.

(b) A person commits a misdemeanor if he operates or causes to be operated a sexually oriented business outside of a designated C-3 district. All sexually oriented businesses shall be located within a C-3 district.

(c) A person commits a misdemeanor if he operates or causes to be operated a sexually oriented business within one thousand (1,000) feet of:

(1) A church;

(2) A public or private elementary or secondary school;

(3) A boundary of any residential district;

(4) A public park adjacent to any residential district;

(5) The property line of a lot devoted to residential use.

(d) A person commits a misdemeanor if he causes or permits the operation, establishment, substantial enlargement, or transfer of ownership or control of a sexually oriented business within one thousand (1,000) feet of another sexually oriented business.

(e) A person commits a misdemeanor if he causes or permits the operation, establishment, or maintenance of more than one sexually oriented business in the same building, structure, or portion thereof, or the increase of floor areas of any sexually oriented business in any building, structure, or portion thereof containing another sexually oriented business.

(f) For the purpose of this ordinance, measurement shall be made in a straight line, without regard to intervening structures or objects, from the nearest portion of the building or structure used as a part of the premises where a sexually oriented business is conducted, to the nearest property line of the premises of a church or public or private elementary or secondary school, or to the nearest boundary of an affected public park, residential district, or residential lot.

(g) For purposes of subsection (d) of this section, the distance between any two (2) sexually oriented businesses shall be measured in a straight line, without regard to intervening structures or objects, from the closest exterior wall of the structure in which each business is located.

(h) Any sexually oriented business lawfully operating on August 1, 1987, that is in violation of subsection (a) through (g) of this section shall be deemed a nonconforming use. The nonconforming use will be permitted to continue for a period not to exceed two (2) years, unless sooner terminated for any reason or voluntarily discontinued for a period of thirty (30) days or more. Such nonconforming uses shall not be increased, enlarged, extended or altered except that the use may be changed to a conforming use. If two (2) or more sexually oriented businesses are within one thousand (1,000) feet of one another and otherwise in a permissible location, the sexually oriented business which was first established and continually operating at a particular location is the conforming use and the later-established business(es) is nonconforming.

(i) A sexually oriented business lawfully operating as a conforming use is not rendered a non-conforming use by the location, subsequent to the grant or renewal of the sexually oriented business permit and/or license, of a church, public park, residential district, or a residential lot within one thousand (1,000) feet of the sexually oriented business. This provision applies only to the renewal of a valid permit and/or license is submitted after a permit and/or license has expired or has been revoked. (Ord. No. 1609-87, § 12, 8-1-87; Ord. No. 1671-87, § 1, 9-1-87)

## 8A-13. Additional regulations for adult motels

(a) Evidence that a sleeping room in a hotel, motel, or a similar commercial establishment has been rented and vacated two (2) or more times in a period of time that is less than ten (10) hours creates a rebuttable presumption that the establishment is an adult motel as that term is defined in this chapter.

(b) A person commits a misdemeanor if, as the person in control of a sleeping room in a hotel, motel, or similar commercial establishment that does not have a sexually oriented permit and/or license, he rents or subrents a sleeping room to a person and, within ten (10) hours from the time the room is rented, he rents or subrents the same sleeping room again.

(c) For purposes of subsection (b) of this section, the terms "rent" or "subrent" mean the act of permitting a room to be occupied for any form of consideration. (Ord. No. 1609-87 § 13, 8-1-87)

## 8A-14. Regulations pertaining to exhibition of sexually explicit films or videos

(a) A person who operates or causes to be operated a sexually oriented business, other than an adult motel, which exhibits on the premises in a viewing room of less than one hundred fifty (150) square feet of floor space, a film, video cassette, or other video reproduction which depicts specified sexual activities or specified anatomical areas, shall comply with the following requirements:

(1) Upon application for a sexually oriented permit and/or license, the application shall be accompanied by a diagram of the premises showing a plan thereof specifying the location of one or more manager's stations and the location of all overhead lighting fixtures and designating any portion of the premises in which patrons will not be permitted. A manager's station may not exceed thirty-two (32) square feet of floor area. The diagram shall also designate the place at which the permit will be conspicuously posted, if granted. A professionally prepared diagram in the

nature of an engineer's or architect's blueprint shall not be required; however, each diagram should be oriented to the north or to some designated street or object and should be drawn to a designated scale or with marked dimensions sufficient to show the various internal dimensions of all areas of the interior of the premises to an accuracy of plus or minus six (6) inches. The Richland County zoning administrator may waive the foregoing diagram for renewal applications if the applicant adopts a diagram that was previously submitted and certifies that the configuration of the premises has not been altered since it was prepared.

(2) The application shall be sworn to be true and correct by the applicant.

(3) No alteration in the configuration or location of a manager's station may be made without the prior approval of the zoning administrator or his designee.

(4) It is the duty of the owners and operator of the premises to ensure that at least one employee is on duty and situated in each manager's station at all times that any patron is present inside the premises.

(5) The interior of the premises shall be configured in such a manner that there is an unobstructed view from a manager's station of every area of the premises to which any patron is permitted access for any purpose excluding restrooms. Restrooms may not contain video reproduction equipment. If the premises has two or more manager's stations designated, then the interior of the premises shall be configured in such a manner that there is an unobstructed view of each area of the premises to which any patron is permitted access for any purpose from at least one of the manager's stations. The view required in this subsection must be by direct line of sight from the manager's station.

(6) It shall be the duty of the owners and operater, and it shall also be the duty of any agents and employees present in the premises to ensure that the view area specified in subsection (5) remains unobstructed by any doors,walls, merchandise, display racks or other

materials at all times and to ensure that no patron is permitted access to any area of the premises which has been designated as an area in which patrons will not be permitted in the application filed pursuant to subsection (1) of this section.

(7) No viewing room may be occupied by more than one person at any time.

(8) The premises shall be equipped with overhead lighting fixtures of sufficient intensity to illuminate every place to which patrons are permitted access at an illumination of not less than one footcandle as measured at the floor level.

(9) It shall be the duty of the owners and operator and it shall also be the duty of any agents and employees present in the premises to ensure that the illumination described above, is maintained at all times that any patron is present in the premises.

(b) A person having a duty under subsection (1) through (9) of subsection (a) above commits a misdemeanor if he knowingly fails to fulfill that duty. (Ord. No. 1609-87, § 14, 8-1-87)

## 8A-15.   Exemptions

It is a defense to prosecution under sections 8A-5 and 8A-12 that a person appearing in a state of nudity did so in a modeling class operated:

(1) By a proprietary school, licensed by the state of South Carolina; a college, junior college, or university supported entirely or partly by taxation;

(2) By a private college or university which maintains and operates educational programs in which credits are transferable to a college, junior college, or university supported entirely or partly by taxation; or

(3) In a structure:

(a) Which has no sign visible from the exterior of the structure and no other advertising that indicates a nude person is available for viewing; and

(b) Where, in order to participate in a class a student must enroll at least three (3) days in advance of the class; and

(c) Where no more than one nude model is on the premises at any one time. (Ord. No. 1609-87, § 15, 8-1-87)

## 8A-16. Injunction

A person who operates or causes to be operated a sexually oriented business without a valid permit and/or license or in violation of section 8A-12 of this ordinance is subject to a suit for injunction as well as prosecution for criminal violations. Such violations shall be punishable by a fine of two hundred dollars ($200.00) or thirty (30) days imprisonment. (Ord. No. 1609-87, § 16, 8-1-87)