533 S.E.2d 886

Teresa HARKINS, Appellant,

v.

GREENVILLE COUNTY, Respondent.

J.O.D., Inc., Appellant,

v.

Greenville County, Respondent.

R.P. Social Club, Inc., Appellant,

v.

Greenville County, Respondent.

Runaway Entertainment, Inc., d/b/a The Landing Strip, Appellant,

v.

Greenville County, Respondent.

Malcolm Johnson and Dawn Lewis, individually and d/b/a Taboo's, Appellants,

v.

Greenville County, Respondent.

No. 25112.

Supreme Court of South Carolina.

Heard Sept. 21, 1999.

Filed April 24, 2000.

Refiled June 12, 2000.

worker's compensation. *See, e.g., Medlin v. Upstate Plaster Service,* 329 S.C. 92, 495 S.E.2d 447 (1998).

608

610

William G. Yarborough, III and Denise Campbell Yarborough, both of Ashmore & Yarborough, of Greenville; and Suzanne E. Coe, of Coe & Turnage, LLC, of Greenville, all, for appellants.

W. Howard Boyd, Jr. and Ronald K. Wray, II, of Gibbes, Gallivan, White & Boyd, PA, of Greenville, for respondent.

## ORDER

The opinion heretofore filed in this case, Opinion No. 25112, filed April 24, 2000 is withdrawn and the attached opinion is substituted in its place. The Conclusion section of the initial opinion has been clarified so that only the licensing portion of the Greenville County Ordinance is declared unconstitutional. Respondent's petition for rehearing is denied.

/s/ Ernest A. Finney, Jr., C.J.

/s/ Jean H. Toal, J.

/s/ James E. Moore, J.

/s/ John H. Waller, Jr., J.

/s/ E.C. Burnett, III, J.

TOAL, Justice:

Appellants The Landing Strip, Taboo's, Harkins, J.O.D., Nepal's, and R.P. Social Club ("the Adult Businesses") challenged the constitutionality of a Greenville County ("the County") permitting and zoning ordinance. The trial court found the ordinance constitutional and the sexually oriented businesses have appealed. We reverse.

### FACTUAL/PROCEDURAL BACKGROUND

In February 1995, the County enacted Greenville County Zoning Ordinance No. 2673 ("the Ordinance") regulating the location of all sexually oriented businesses. The Ordinance requires sexually oriented businesses to obtain a permit from

the County's zoning administrator in order to operate. Furthermore, the Ordinance controls where sexually oriented businesses can locate. The Adult Businesses are all sexually oriented businesses located in zoned areas that do not permit adult uses.

The County sent each Adult Business a letter informing them they were in violation of the Ordinance and had one year to comply. At the end of that year, none of the Adult Businesses had complied with the Ordinance and the County ordered them closed. The Adult Businesses then filed suit claiming the Ordinance is unconstitutional and sought injunctive relief against the County. The County counterclaimed seeking an injunction requiring the Adult Businesses to comply with the Ordinance.

At trial, the Adult Businesses argued the Ordinance is an unconstitutional prior restraint because it fails to provide for prompt judicial review. Also, the Adult Businesses argued that the Ordinance impermissibly zoned them out of the County. The Adult Businesses supported this argument with expert testimony that only four to five S–1 sites were available in the County for sexually oriented businesses to locate.

The County responded by pointing out that the Ordinance required a permit to be issued within 30 days of the application unless one of seven specified conditions existed. The County argued that this time limit provided for prompt judicial review because if the permit was not issued within the 30 days, the sexually oriented business could seek relief from the court system. The County also presented expert testimony showing fourteen available S–1 sites. The expert also estimated that there were "a couple of hundred" sites available in the unzoned portion of the County.

The trial court ruled for the County on all issues. Initially, the trial court determined over one hundred sites existed for relocation in the unzoned portion of the County. Furthermore, the trial court found nine S–1 sites existed in the County where the Adult Businesses could relocate. Based on these findings, the trial court concluded the Adult Businesses were not impermissibly zoned out of the County.

The trial court also found the Ordinance was not an unconstitutional prior restraint because the zoning administrator did

not have unbridled discretion in granting or denying a permit. Also, the trial court ruled that the relatively brief 30 day period between the permit application and decision by the zoning administrator guaranteed prompt judicial review. The Adult Businesses appealed and the following issues are before the Court:

(1) Did the trial court err in finding the Ordinance was not an unconstitutional prior restraint on speech?

(2) Did the trial court err in finding the Ordinance was a reasonable time, manner, and place restriction because there were locations both in the zoned and unzoned areas of the County where the Adult Businesses could relocate?

## LAW/ANALYSIS

Our United States Supreme Court has held that businesses providing non-obscene, sexually explicit material are entitled to protection by the First and Fourteenth Amendment. *See Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *see also Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (recognizing that nude dancing also receives First Amendment protection). However, the Supreme Court has also recognized sexually oriented businesses may have negative secondary effects, such as an increase in crime, on their surrounding communities. *Young,* 427 U.S. at 68, 96 S.Ct. at 2452–53. In light of these secondary effects, the Supreme Court has allowed local governments to regulate sexually oriented businesses, not based on the content of the speech, but as a response to their negative impact on the community. *Id.* Most often, local governments have chosen to use zoning restrictions and licensing requirements as the tools to balance free speech concerns with the regulation of secondary effects.

Local governments can enact zoning laws based on their police power to protect the health, safety, and welfare of the community. *See, e.g.,* S.C.Code Ann. § 5–23–10 (1976); S.C.Code Ann. § 6–7–10 (1976). Zoning laws that have the effect of restricting freedom of expression without regard to

the content of the speech are referred to as "content neutral" laws. *Renton*, at 46–47, 106 S.Ct. at 928. Zoning ordinances merely restricting the location of adult businesses without banning them altogether are considered content neutral as long as they are based on their prevention of the harmful secondary effects the Supreme Court has noted these sexually oriented businesses may cause. *Id.* Since these zoning laws are considered content neutral, they are evaluated as "time, place, and manner" regulations for purposes of determining their validity under the First Amendment. *Id.* Permissible time, place, and manner restrictions are justified by a substantial governmental interest unrelated to free speech and allows for adequate alternative avenues of communication of the sexually explicit material. *Id.* Therefore, sexually oriented business regulations will be upheld if they are designed to serve the substantial governmental interest of preventing harmful secondary effects and they allow for reasonable avenues of communication. *Id.*

Based on their police powers described above, local governments may also impose licensing requirements on adult businesses. However, when a municipality imposes licensing requirements on only businesses which retail a certain kind of speech, such as non-obscene, sexually explicit speech, serious questions as to the validity of the licensing requirements arise. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225, 110 S.Ct. 596, 604, 107 L.Ed.2d 603 (1990). In order not to offend the First Amendment, such licensing regulations must satisfy two tests: (1) the regulation must impose adequate standards for officials to apply in rendering a decision as whether to grant, deny, or revoke a license; and (2) the regulation must also impose procedural safeguards. *Id.* at 225–26, 110 S.Ct. at 605.

The County attempts to use both forms of regulations of businesses retailing sexually explicit materials: zoning restrictions based on location and imposition of licensing requirements. The Ordinance in this case is basically a duplicate of the Richland County ordinance this Court analyzed in both *Centaur, Inc. v. Richland County*, 301 S.C. 374, 392 S.E.2d 165 (1990) and *Rothschild v. Richland County Bd. of Adjustment*, 309 S.C. 194, 420 S.E.2d 853 (1992). Those cases focused mainly on whether the Richland County ordinance was

a proper time, place, and manner zoning restriction. In regards to the licensing requirement, *Centaur* only analyzed whether the ordinance imposed adequate standards for officials to apply in rendering a decision as whether to deny, suspend, or revoke a license. However, as *Centaur*'s footnote 4 makes clear, this Court did not discuss whether the licensing requirement met procedural safeguards so as to be constitutional.

## I. THE COUNTY'S ORDINANCE AS AN UNCONSTITUTIONAL PRIOR RESTRAINT

The Adult Businesses argue that the Ordinance's licensing requirement operates as an unconstitutional prior restraint on speech because it fails to impose adequate procedural safeguards. We agree.

The Adult Businesses base their arguments on *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). In *FW/PBS*, the Supreme Court struck down a Dallas licensing scheme as being an impermissible prior restraint on protected speech. In finding the permitting scheme improper, the U.S. Supreme Court outlined a two prong analysis:

> [T]he licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied.

*Id.* at 228, 110 S.Ct. at 606. The Supreme Court struck down the Dallas scheme because it failed to require the licensor to make the decision whether to issue the license "within a specified and reasonable time period." The *FW/PBS* opinion did not address the second prong of "prompt judicial review."

### A. THE ADMINISTRATIVE DECISION

In regards to the first prong of the Supreme Court's test, the Ordinance differs significantly from the Dallas ordinance found unconstitutional in *FW/PBS*. Under the Ordinance, the County Zoning Administrator has 30 days from the date of the application to issue a permit to a sexually oriented business. Unlike the unconstitutional Dallas ordinance, all

necessary inspections of the Adult Business applicant must be completed within 21 days of the application. Therefore, 30 days is the longest period of time that a sexually oriented business permit applicant would have to wait for the County's zoning administrator's decision.

■ However, the lower court failed to discuss the procedure for appealing a decision by the County zoning administrator. Before appealing to the circuit court, the Adult Businesses must exhaust all administrative remedies. *See generally Garris v. Governing Bd. of South Carolina Reinsurance Facility,* 333 S.C. 432, 511 S.E.2d 48 (1998). Since the Ordinance fails to proscribe any special method for appealing a permit denial by the zoning administrator, the standard process for appealing a zoning administrator's decision would apply. The record does not contain the Greenville Ordinances controlling appeals from zoning administrator decisions. Furthermore, this Court cannot take judicial notice of such local ordinances. *Kincaid v. Landing Dev. Corp.,* 289 S.C. 89, 344 S.E.2d 869 (Ct.App.1986). Without those ordinances, it is impossible to know whether the zoning administrator's decision is immediately appealable to the circuit court, or whether the zoning administrator's decision must first be heard by a board of zoning appeals in order to exhaust all administrative remedies. In any event, it is impossible to determine the full time period necessary to reach a final administrative decision.

■ Since the ordinances governing appeals from the zoning administrator are not part of the record on appeal, we affirm the lower court's decision on this issue in favor of the County. The Adult Businesses failed to include these ordinances in the record on appeal. The Adult Businesses, as the appellant in this issue, have the burden of presenting this Court with an adequate record. *Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 446–47, 494 S.E.2d 827, 834 (Ct.App.1997). Without the necessary County ordinances, this Court cannot determine the time period between the initial permit application and a final appealable administrative decision.

## B. PROMPT JUDICIAL REVIEW

The Adult Businesses argue that the trial court erred in finding that mere access to the state court system satisfies *FW/PBS*'s requirement of "prompt judicial review." We agree.

Prior to the *FW/PBS* decision, prompt judicial review required a final judicial determination on the merits. In *Freedman v. Maryland*, 380 U.S. 51, 59, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965), the Supreme Court stated:

> Any restraint imposed *in advance of a final judicial determination* on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution ... [T]he procedure must ... assure *a prompt final judicial decision*, to minimize the deterrent effect of an interim and possible erroneous denial of a license. (Emphasis added).

However, since the *FW/PBS* decision, the federal circuits have split on retaining the "final judicial determination on the merits" requirement as an element of prompt judicial review. This split occurred because Justice O'Connor used language in her opinion such as the "possibility of," or the provision of "an avenue for," prompt judicial review as the essence of the safeguard.[1]

The Fourth, Sixth, and Ninth Circuits hold the view that "prompt judicial review" continues to require a timely judicial

---

1. The Fourth Circuit has taken the position that because of the fragmented nature of the *FW/PBS* decision, this case does not effectuate any change in the prompt judicial review requirement. The Fourth Circuit held:

   > Moreover, it is well settled that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.' (Citations omitted) Thus, even if Justice O'Connor's opinion in *FW/PBS* could be read as having altered the *Freedman* "prompt judicial review" factor ... because this position obviously did not gain the assent of the concurring Justices (Brennan, Marshall, and Blackmun, who made clear that they believed that all three of the *Freedman* procedural safeguards were required), *FW/PBS* could not have modified *Freedman.*"

   *11126 Baltimore Blvd., Inc. v. Prince George's County*, 58 F.3d 988, 999 (1995).

determination on the merits. *See Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1101–02 (9th Cir.1998); *11126 Baltimore Blvd., Inc. v. Prince George's County*, 58 F.3d 988, 998–1001 (4th Cir.1995); *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 225 (6th Cir.1995). These courts have reasoned that because a person always has a judicial forum available when his or her speech is allegedly encroached, "to hold that mere access to judicial review fulfills [*Freedman*'s prompt review requirement] makes the safeguard itself meaningless." *Baby Tam*, 154 F.3d at 1101. As the Ninth Circuit explained in *Baby Tam:*

> The phrase "judicial review" compels this conclusion. The phrase necessarily has two elements—(1) consideration of a dispute by a judicial officer, and (2) a decision. Without consideration, there is no review; without a decision, the most exhaustive review is worthless. In baseball terms it would be like throwing a pitch and not getting a call. As legendary major league umpire Bill Klem once said to an inquisitive catcher: "It ain't nothin' till I call it." This is also true of judicial review. Until the judicial officer makes the call, it ain't nothin'.

*Id.* at 1101–02. In these cases a "final" determination does not refer to a court's decision becoming final through various rehearing and appellate procedures. *Id.* A final determination means that a judicial officer should make the final decision denying a license rather than an administrative officer. *Id.*

The Courts of the First, Fifth, and Seventh Circuits have approached the meaning of "prompt judicial review" differently after the *FW/PBS* case. *See TK's Video, Inc. v. Denton County*, 24 F.3d 705, 709 (5th Cir.1994); *Graff v. City of Chicago*, 9 F.3d 1309, 1324–25 (7th Cir.1993); *Jews for Jesus, Inc. v. Massachusetts Bay Transp. Auth.*, 984 F.2d 1319, 1327 (1st Cir.1993). These Circuits have found that prompt access to judicial review is sufficient, even if there is no time frame for either a hearing or a decision on the merits. *See TK's Video, Inc.*, 24 F.3d at 709; *Graff*, 9 F.3d at 1324–25.

In order to comport with the requirements of *Freedman* and *FW/PBS*, we choose to follow the Fourth, Sixth, and Ninth Circuits by requiring that the procedure provide for a

final judicial determination within a reasonable time frame. Otherwise, the prompt judicial review requirement loses all significance since the protection afforded by judicial review is meaningful only when it can be anticipated within a brief time period. Also, whether the *FW/PBS* decision could even alter the prompt judicial review standard as set by *Freedman* is questionable due to the fractured nature of the *FW/PBS* court.

In the current case, there is no guarantee that a judicial hearing will be held or a decision will be rendered within a prescribed period of time. Because of the absence of such a guarantee, the licensing scheme fails to provide for prompt judicial review.[2] Without prompt judicial review, the Ordinance's permitting scheme is unconstitutional. The other portions of the Ordinance are severable from those sections pertaining only to the licensing requirements for adult businesses. *See Joytime Distrib. & Amusement Co. v. State,* 338 S.C. 634, 528 S.E.2d 647 (1999). As such, those portions of the Ordinance not addressed in this opinion may still be enforced.

### C. PERMIT SUSPENSIONS BY THE ZONING ADMINISTRATOR

■ The Adult Businesses argue on appeal that the Ordinance is unconstitutional because of the power granted to the zoning administrator to unilaterally suspend the permits of sexually oriented businesses. This issue has not been preserved for review.

---

2. We recognize that under the South Carolina Rules of Civil Procedure, municipal issues of this type are not expedited or required to be decided within a certain time frame. Other states have specific provisions in their rules of civil procedure that allow for such expedited review. *See e.g.,* Pa. R. Civ. P. 1531(f)(1). Without such a provision, a municipality cannot guarantee that a judicial hearing will be held and a decision rendered within any specific amount of time. This procedural problem illustrates how constitutionally perilous it can be for a municipality to use a licensing scheme to regulate protected speech. Zoning schemes, although they have First Amendment concerns of their own, have met with greater success in balancing free speech concerns with the regulation of adult businesses. *See Restaurant Row Associates v. Horry County,* 335 S.C. 209, 516 S.E.2d 442 (1999); *Condor, Inc. v. Board of Zoning Appeals,* 328 S.C. 173, 493 S.E.2d 342 (1997); *Rothschild v. Richland County Bd. of Adjustment,* 309 S.C. 194, 420 S.E.2d 853 (1992); *Centaur, Inc. v. Richland County,* 301 S.C. 374, 392 S.E.2d 165 (1990).

In order to be preserved for review, the lower court must rule upon the issue. *Wilder Corp. v. Wilke,* 330 S.C. 71, 497 S.E.2d 731 (1998). The trial court order does not address the power of permit suspension by the zoning administrator. Since the Adult Businesses failed to have the trial court rule on this issue, this Court will not address it on appeal.

## II. THE ORDINANCE DOES NOT ZONE THE ADULT BUSINESSES OUT OF EXISTENCE

The Adult Businesses argue section 12(a) of the Ordinance unreasonably limits alternative avenues of communication because it restricts the location of sexually oriented businesses to S-1 zoned property and that not enough S-1 property is available for relocation. We disagree.

Section 12 of the Ordinance has nine subsections regulating the permissible locations of sexually oriented businesses. Section (a) states:

A person commits a misdemeanor if he operates or causes to be operated a sexually oriented business outside of a designated S-1 district. All sexually oriented businesses shall be located within a S-1 district.

When read alone, this section appears to prevent a sexually oriented business from locating in the unzoned portion of the County. However, subsection (i) of Section 12 states:

With the *exception of subsection (a) above,* the provisions of this ordinance shall apply to those areas of the county that are not zoned. (Emphasis added).

Subsection (i) specifically excludes the S-1 zoning requirement of subsection (a) from applying to sexually oriented businesses located in unzoned areas of the County. "In construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect." *TNS Mills, Inc. v. South Carolina Dept. of Revenue,* 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998). Also, "statutes are to be construed in favor of constitutionality, and the court will presume a legislative act is constitutionally valid unless a clear showing to the contrary is made." *Bradley v. Hullander,* 277 S.C. 327, 330, 287 S.E.2d 140, 141 (1982). When read together, subsection (i) allows sexually oriented businesses to locate

in the County's unzoned areas while still requiring such businesses to meet the other requirements of Section 12.

Furthermore, the trial court made the factual finding that nine S–1 sites existed in the County where the Adult Businesses could relocate. An action for a declaratory judgment that a zoning ordinance is invalid is at law. *Petersen v. City of Clemson*, 312 S.C. 162, 439 S.E.2d 317 (Ct.App. 1993). In actions at law tried without a jury, the findings of fact of the judge will not be disturbed on appeal unless found to be without evidence which reasonably supports them. *Townes Assocs. Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976). Since the trial court found that nine S–1 sites are available for relocation, more than enough S–1 properties exist where the six Adult Businesses could relocate.

## CONCLUSION

Despite finding the permitting scheme of the Ordinance at issue unconstitutional, this Court continues to view local governmental regulation of sexually oriented businesses as proper. *See Restaurant Row Associates v. Horry County*, 335 S.C. 209, 516 S.E.2d 442 (1999). As with other legislative enactments, this Court accords ordinances regulating sexually oriented businesses a presumption of constitutionality which the attacking party has the burden of overcoming. *See Centaur, Inc. v. Richland County*, 301 S.C. 374, 392 S.E.2d 165 (1990). However, when zoning ordinances invoke First Amendment concerns, we must follow the guidelines supplied by the United States Supreme Court. *Id.*, 301 S.C. at 379, 392 S.E.2d at 168. That precedent requires local municipalities to tailor their sexually oriented business regulations to address their local situations.

Richland County's zoning situation is very different from Greenville County's in that the former is wholly zoned and the later is not. Whether a sexually oriented business zoning regulation is designed to serve a substantial governmental interest and allows for reasonable avenues of communication is a question that must be answered in light of the particular situation of each locality that enacts such an ordinance. Municipalities different from Richland County cannot merely copy the ordinance at issue in *Centaur* and expect to automati-

cally meet every constitutional requirement. Each governmental body must look at its own situation and do the legal work necessary to ensure that their laws comport with precedent from this Court as well as the United States Supreme Court.

Based on the foregoing, we **REVERSE** the trial court's decision, and hold that the permitting scheme of the Greenville County ordinance is unconstitutional.

FINNEY, C.J., MOORE, WALLER, and BURNETT, JJ., concur.