**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1065**

CRICKET STORE 17, L.L.C., d/b/a Taboo,

Plaintiff - Appellant,

v.

CITY OF COLUMBIA,

Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Columbia.   Terry L. Wooten, Chief District Judge.   (3:13-cv-03557-TLW)

Argued: December 6, 2016            Decided: January 25, 2017

Before WILKINSON, AGEE, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Thomas R. Goldstein, BELK, COBB, INFINGER & GOLDSTEIN, P.A., Charleston, South Carolina, for Appellant.   Scott Dean Bergthold, LAW OFFICE OF SCOTT D. BERGTHOLD, P.L.L.C., Chattanooga, Tennessee, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case presents a First Amendment challenge to an ordinance regulating adult businesses in Columbia, South Carolina. Appellant Cricket Store 17, LLC, conducts business as Taboo, a retail shop selling sexually oriented merchandise in the city of Columbia ("City"). Shortly after Taboo opened, the City enacted an ordinance comprehensively regulating the operations and locations of adult businesses. Taboo, which no longer would be able to conduct business at its present location, filed suit, challenging the ordinance as an impermissible restriction on free speech.

The district court granted summary judgment to the City, relying on City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002) and City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986), two cases in which the Supreme Court upheld similar ordinances. Under Alameda Books and City of Renton, the district court concluded, the ordinance is consistent with the First Amendment, because it is a content-neutral regulation designed to serve a substantial government interest in ameliorating the secondary effects of adult businesses and because it leaves adult businesses with a reasonable opportunity to operate in alternative locations. We agree with the district court and affirm its decision.

2

Taboo opened for business on December 5, 2011, and thanks in part to an amortization period for existing businesses in the City's ordinance, has been operating continuously since then. The store sells various products including clothing, novelties, DVDs, and magazines, all of which are geared toward an adult audience. As a retail-only establishment, Taboo provides take-home merchandise but offers no on-site entertainment, such as live performances or movies. Located on a major highway, Taboo is the City's only sexually oriented business.

Less than a month after Taboo opened, the City, for the first time in over a decade, undertook a review of its regulation of adult businesses. On December 22, 2011, the Columbia City Council held a public meeting, at which a City consultant made a presentation about the harmful secondary effects of adult businesses. Those effects included, the City Council learned, negative impacts on surrounding properties; increased criminal behavior; lewd conduct and illicit sexual activity; drug use and trafficking; and litter, noise and other forms of urban blight. The presentation emphasized that these negative secondary effects are associated with all types of adult businesses, including retail-only stores like Taboo.

The presentation also included information about how to address these secondary effects – and, importantly, how to do so consistent with the First Amendment. The City Council was

3

provided with land studies, crime impact reports, journal articles and judicial decisions detailing constitutional means of regulating adult businesses in order to prevent their documented harmful secondary effects. In total, the legislative record spanned almost 2,200 pages and included forty-six judicial decisions, twenty-seven studies on the impact of sexually-oriented businesses in various cities, and nineteen summaries of reports concerning negative secondary effects.

A week later, on December 29, 2011, the City enacted Ordinance Number 2011-105 (the "Ordinance"). According to the Ordinance, its purpose is to "prevent the deleterious secondary effects of sexually oriented businesses within the City." J.A. 25. The Ordinance includes extensive findings, based on the legislative record, identifying a "wide variety of adverse secondary effects" of sexually oriented businesses "as a category," including but not limited to "personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation." J.A. 26. Those effects, the Ordinance goes on to find, are minimized if sexually oriented businesses are separated from sensitive land uses and also from each other, so as to avoid a concentration of adult businesses.

Accordingly, among the restrictions placed on adult businesses by the 2011 Ordinance are the locational constraints directly at issue here:  Under § 11-620 of the Ordinance, no sexually oriented business may operate within 700 feet of a sensitive use – a religious institution, educational facility, outdoor recreational space, or residential property – nor within 1000 feet of another sexually oriented business.  Any non-conforming adult business was given a two-year amortization period within which to recoup its initial investment and then relocate to a new site.[1]

Taboo took advantage of this amortization period and continued operating for two years, despite the fact that its location did not meet § 11-620's requirements.  Instead of relocating at the end of the two-year period, Taboo filed suit in district court to set aside the Ordinance on First Amendment free speech grounds.  Both parties moved for summary judgment.

In a thorough and careful opinion, the district court granted summary judgment to the City.  See Cricket Store 17, LLC v. City of Columbia, 97 F. Supp. 3d 737, 742 (D.S.C. 2015).  The

---

[1] A second ordinance, adopted by the City in 2012, updated zoning requirements for sexually oriented businesses to reflect the locational restrictions of the 2011 Ordinance, and made minor changes to those locational restrictions not relevant here.  Because the two ordinances set out substantially the same purpose and findings, relying on substantially the same evidence of negative secondary effects, we need not differentiate between them for purposes of our analysis.

court began by laying out the three-step standard under which the Supreme Court upheld adult-business ordinances in City of Renton and Alameda Books: A regulation of sexually oriented businesses is consistent with the First Amendment if it (a) is a time, place and manner restriction rather than an outright ban; (b) is treated as content-neutral because it is aimed at the secondary effects of adult businesses rather than their message; and (c) is designed to serve the substantial government interest in ameliorating secondary effects and does not unreasonably limit alternative avenues of communication. Cricket, 97 F. Supp. 3d at 745. The court then meticulously applied that framework to uphold the City's Ordinance. See id. at 745–64. We summarize the district corut's lengthy and detailed opinion only briefly here.

The first step of the analysis was straightforward. The City's Ordinance does not ban adult businesses outright, the court reasoned, but instead primarily restricts when and where they may operate, much like the ordinance approved by the Supreme Court in City of Renton. Accordingly, the court concluded, the Ordinance is "properly analyzed as [a] time, place and manner regulation[]," id. at 745, – a determination that Taboo does not appear to contest.

Second, the court concluded that because the Ordinance explicitly targets the secondary effects of adult businesses

6

rather than their speech itself, it is properly treated as "content-neutral" under City of Renton and Alameda Books. Id. at 746; see City of Renton, 475 U.S. at 929-30 ("[Z]oning ordinances designed to combat the undesirable secondary effects of [adult] businesses are to be reviewed under the standards applicable to 'content-neutral' time, place and manner regulations."); Alameda Books, 535 U.S. at 434 (plurality opinion) (same); id. at 448-50 (Kennedy, J., concurring) (discussing treatment as content-neutral of regulations aimed at secondary effects).

Taboo argued that the Ordinance should be treated as content-based, and thus presumptively invalid, because its timing – coming immediately after Taboo opened for business – and certain statements by City Council members showed that it was aimed at Taboo. The district court rejected that argument, reasoning that even if Taboo's opening "spurred the City into action," that would not demonstrate that the City's action was directed at Taboo's message rather than the secondary effects of its operations. Cricket, 97 F. Supp. 3d at 746-47. As the district court noted, id., that conclusion is compelled by our decision in D.G. Restaurant Corp. v. City of Myrtle Beach, 953 F.2d 140 (4th Cir. 1991), in which we upheld a restriction on adult businesses despite the fact that it was enacted in direct response to the planned opening of a topless dancing

7

establishment. The mere fact that an adult business has prompted a regulation, we explained, does not mean that the regulation is targeted at the "eradication of any erotic message" the business may convey. Id. at 146.

Next, the district court considered whether the Ordinance is "designed to serve a substantial governmental interest" as required by City of Renton, 475 U.S. at 50, and Alameda Books, 535 U.S. at 434 (plurality opinion). As the court recognized, Cricket, 97 F. Supp. 3d at 751, it is well established that a municipality has a substantial interest in preventing the negative secondary effects of adult businesses. And in showing that an ordinance is "designed to serve" that interest, the district court explained, a municipality need not meet an "arduous" standard. Id. at 745, 746. Instead, it may rely on "whatever evidence" it "reasonably believe[s] to be relevant to the problem" before it. Id. at 746 (quoting City of Renton, 475 U.S. at 51–52).

As both we and the Supreme Court have emphasized – and as the district court recognized, Cricket, 97 F. Supp. 3d at 746 – that generous standard, which reflects the significant deference owed to a locality's policy expertise and democratically accountable judgments, may be satisfied with "very little evidence." See Alameda Books, 535 U.S. at 451 (Kennedy, J., concurring); Imaginary Images, Inc. v. Evans, 612 F.3d 736, 742,

8

749 (4th Cir. 2010) (upholding municipal regulation of sexually oriented entertainment). In particular, a city need not conduct its own studies, nor produce evidence independent of that already generated by other localities defending their own regulations. City of Renton, 475 U.S. at 51. We have allowed cities to rely on the experience of other localities, findings expressed in other court cases, and simple appeals to common sense. Id.; Imaginary Images, 612 F.3d at 742.

After carefully analyzing the extensive record before it, the district court concluded that the Ordinance was based on evidence "reasonably believed to be relevant" to the problem of secondary effects. Cricket, 97 F. Supp. 3d at 746–51. Under the precedent discussed above, the court determined, the City was not required to conduct its own research, but could rely on the record provided to the City Council, including "dozens of court opinions and orders, reports from various cities around the country, and several journal articles." Id. at 748. And while it was not necessary that the City's evidence be specific to retail-only businesses such as Cricket, the district court reasoned, the City in fact had relied on evidence about the secondary effects of retail-only stores in enacting the Ordinance. Id. at 748–49. Finally, while Taboo's expert questioned the validity of the City's studies and fact-finding, his report established, "at most, that the City could have

9

reached a different conclusion about the link between sexually oriented businesses and negative secondary effects," and not that the conclusion the City did reach was without evidentiary support sufficient to meet the standard laid out in City of Renton and Alameda Books. Id. at 749. "The Court is not required to re-weigh the evidence considered by the City, and the Court will not substitute its judgment for that of the Columbia City Council." Id. (citing, inter alia, Imaginary Images, 612 F.3d at 747).

Finally, the district court turned to the last step of the analysis: whether the City's Ordinance left available alternative avenues of communication for adult businesses and, more specifically, alternative sites on which an adult business could operate. As the district court recognized, City of Renton defines an "available" alternative site broadly, to include land that already is occupied and regardless of the economic feasibility of relocating or the commercial desirability of a particular site. Cricket, 97 F. Supp. 3d at 753 (citing City of Renton, 475 U.S. at 53-54). Against that standard, the court painstakingly analyzed the forty-six alternative sites identified by the City and individually addressed Taboo's objections to each. Id. at 755-63. The court ultimately found that all forty-six sites were available for use by an adult business – and that "even if the Court's conclusion that exactly

10

forty-six sites are available is incorrect, there is no question that numerous sites are available." Id. at 764. Accordingly, the court determined that the Ordinance does not unreasonably limit alternative avenues of communication by adult businesses. Id. And because the City had satisfied the last of the conditions of constitutionality established by City of Renton and Alameda Books, the court held that the Ordinance does not violate the First Amendment. Id.[2]

Taboo timely appealed, raising substantially the same arguments it advanced in the district court. Having carefully considered the controlling law and the parties' briefs and oral arguments, we affirm on the reasoning of the opinion of the district court.

AFFIRMED

---

[2] The district court also held that the Ordinance does not constitute an unconstitutional prior restraint on speech. Cricket, 97 F. Supp. 3d at 764-65. In addition, it denied various discovery motions filed by Taboo. Id. at 766-67. Lastly, the court at other points of the proceedings denied Taboo leave to amend its complaint, and denied a motion by Taboo to vacate its judgment based on a subsequent amendment to the City's Ordinance. We find no error in the district court's rulings on these points.