# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Greenville Bistro, LLC, a South Carolina Limited Liability Company, d/b/a Bucks Racks & Ribs, and Frontage Road Associates, Inc., a South Carolina Corporation, Respondents,

v.

Greenville County, a Political Subdivision of the State of South Carolina, and Will Lewis, in his Official Capacity as Sheriff of Greenville County, Appellants.

Appellate Case Nos. 2017-001747 and 2018-001393

Appeal from Greenville County
Robin B. Stilwell, Circuit Court Judge
Perry H. Gravely, Circuit Court Judge

Opinion No. 28072
Heard November 17, 2020 – Filed December 8, 2021

**REVERSED AND REMANDED**

John R. Devlin Jr., of Devlin & Antley, P.A., of Greenville, and Scott D. Bergthold, of Law Office of Scott D. Bergthold, P.L.L.C., of Chattanooga, TN, for Appellants.

Oscar W. Bannister and Luke A. Burke, both of Bannister, Wyatt & Stalvey, LLC, of Greenville, and Luke Lirot, of Luke Charles Lirot, P.A., of Clearwater, FL, for Respondents.

**JUSTICE JAMES:** These two consolidated appeals filed by Greenville County arise from a zoning dispute between the County and Greenville Bistro, LLC, d/b/a Bucks Racks & Ribs. Greenville Bistro commenced this action against the County to enjoin the County from enforcing an ordinance to deny Greenville Bistro's desired method of operating Bucks Racks & Ribs, located at 805 Frontage Road in Greenville County. Citing other ordinances, the County counterclaimed and moved to enjoin Greenville Bistro from operating Bucks as a sexually oriented business. Both appeals concern the legality of Greenville Bistro operating Bucks as a restaurant with the added feature of scantily clad exotic dancers. The circuit court (Judge Stilwell) granted Greenville Bistro's motion for a temporary injunction, and the County appealed. While the County's appeal was pending, the circuit court (Judge Gravely) denied the County's motion for temporary injunctive relief, ruling that in light of the County's appeal it did not have jurisdiction to consider the County's motion. We reverse both rulings, dissolve the injunction granted to Greenville Bistro, and hold the County is entitled to injunctive relief. We remand to the circuit court for proceedings consistent with this opinion.

## I.

These appeals primarily revolve around two Greenville County Ordinances: Ordinance No. 2673 and Ordinance No. 4869. Ordinance No. 2673 is no stranger to litigation and has been the subject of two land use decisions of this Court, *Harkins v. Greenville County*, 340 S.C. 606, 533 S.E.2d 886 (2000), and *Greenville County v. Kenwood Enterprises, Inc.*, 353 S.C. 157, 577 S.E.2d 428 (2003), *overruled on other grounds by Byrd v. City of Hartsville*, 365 S.C. 650, 620 S.E.2d 76 (2005). *Kenwood* involved 805 Frontage Road, the location of Bucks. Ordinance No. 4869 is new to the appellate scene. The ordinances referred to in this opinion are part of the Record on Appeal.

The current litigation began on May 23, 2017, when Greenville Bistro sued the County, seeking declaratory and injunctive relief against the County's attempts to enforce its Sexually Oriented Business Code, which was established in 1995 by Ordinance No. 2673 and amended in part in 2017 by Ordinance No. 4869. The County counterclaimed for injunctive relief, asking the circuit court to require Greenville Bistro to comply with Ordinance No. 2673 and other portions of the Greenville County Zoning Ordinance (Zoning Ordinance). On June 16, 2017, the circuit court held a hearing solely on Greenville Bistro's motion for injunctive relief, and by order dated July 17, the circuit court temporarily enjoined the County from

enforcing the provisions of Ordinance No. 4869 as to Greenville Bistro at the subject location. The County appealed the circuit court's order.

In March 2018, the circuit court held a hearing on the County's motion for injunctive relief. The County argued that although it was temporarily enjoined from enforcing Ordinance No. 4869, it was nevertheless entitled to temporary injunctive relief because Greenville Bistro was operating a sexually oriented business in violation of Ordinance No. 2673 and was operating a nightclub in violation of another portion of the Zoning Ordinance. The circuit court received testimony and heard argument, but without addressing the merits of the County's arguments, the circuit court ruled it did not have jurisdiction to rule on the County's motion because any grant of relief to the County would impact the County's pending appeal regarding Ordinance No. 4869.

## II.

The applicable ordinances define numerous terms. Most pertinent to our resolution of these appeals are the terms "sexually oriented business," "adult cabaret," and "specified sexual activities." Other defined terms have less importance in light of our various holdings. These terms include "nudity," "semi-nude," and "nightclub."

### A. Ordinance No. 2673

Since it was enacted in 1995, Ordinance No. 2673 has regulated the location of sexually oriented businesses in Greenville County. Under this ordinance, all sexually oriented businesses must be located in an S-1 zoning district. Further, these businesses are prohibited from operating within 1,500 feet of certain properties—such as residences, churches, and child-care facilities. A "sexually oriented business" includes an "adult cabaret," which is defined in Ordinance No. 2673 as "a nightclub, bar, restaurant, or similar commercial establishment which regularly features[,]" in pertinent part, "[l]ive performances which are characterized by . . . 'specified sexual activities' . . . ." The term "specified sexual activities" is defined in pertinent part in Ordinance No. 2673 as any of the following:

(a)　　The fondling or other erotic touching of human genitals, pubic region, buttocks, anus, or female breasts;

(b)　　Sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation, or sodomy; [or]

(c)　　Masturbation, actual or simulated.

The preamble to Ordinance No. 2673 explains that before adopting the ordinance, the County considered multiple studies throughout the country highlighting the numerous negative effects sexually oriented businesses have on nearby residents and property values. The stated purpose of the ordinance was to address "the quality of life and property values of the residents of Greenville County, and at the same time preserve the First Amendment rights of those who would wish to express themselves through adult-oriented entertainment establishments . . . ."

Thereafter, in *Harkins*, several sexually oriented businesses challenged the constitutionality of Ordinance No. 2673. We held the ordinance's strict permitting requirements were unconstitutional, but we upheld the ordinance's regulation of the location of sexually oriented businesses. 340 S.C. at 621, 533 S.E.2d at 894; *id.* at 614, 533 S.E.2d at 890 ("[S]exually oriented business regulations will be upheld if they are designed to serve the substantial governmental interest of preventing harmful secondary effects and they allow for reasonable avenues of communication."). However, legal disputes continued. Because the parties relate some of their arguments to prior rulings, and with the hope that protracted litigation can be avoided in the future, we review those rulings.

## B. Platinum Plus's Permanent Injunction and the 2002 Consent Order

Elephant, Inc., d/b/a Platinum Plus, Kenwood Enterprises, Inc., and Kenwood Gaines (collectively, Platinum Plus) preceded Greenville Bistro as tenant of 805 Frontage Road. After *Harkins* upheld Ordinance No. 2673's location restrictions in 2000, the County sued several adult businesses, including Platinum Plus, seeking to permanently enjoin them from operating sexually oriented businesses in prohibited areas. The County was granted a permanent injunction prohibiting Platinum Plus from operating a sexually oriented business at 805 Frontage Road, as the premises were "within 1,500 feet of a church, the boundary of residential districts, the property lines of lots devoted primarily to residential use, and a family oriented recreation facility." Platinum Plus appealed, and three years after *Harkins*, we affirmed the circuit court's issuance of the permanent injunction in *Kenwood*. We held, in part, that Ordinance No. 2673 survived First Amendment scrutiny. 353 S.C. at 168-71, 577 S.E.2d at 433-35.

While the *Kenwood* litigation was pending, Platinum Plus filed an action for declaratory relief against the County requesting a declaration of the meaning of "nudity" and "semi-nude" as defined by Ordinance No. 2673. Because Ordinance No. 2673 prohibits people from appearing in a "state of nudity" at the subject property, Platinum Plus attempted to comply with the ordinance by presenting entertainers it claimed were merely "semi-nude."

Platinum Plus and the County resolved the declaratory judgment action by consent order (the 2002 Consent Order).  Among other things, Platinum Plus agreed that neither it nor its successors and assigns would operate a sexually oriented business at the property or allow any person to engage in the above-defined "specified sexual activities" while on the premises.

### C. The State's Nuisance Action Against Platinum Plus

Platinum Plus continued operation at 805 Frontage Road.  In 2015, the Greenville County Solicitor, on behalf of the State, filed a nuisance action against Elephant, Inc. and its principal, Gregory Kenwood Gaines, pursuant to South Carolina Code section 15-43-10, et seq.  Greenville County was not a party to this litigation.  Prior to trial, the parties entered into a consent order (the 2015 Consent Order), in which Platinum Plus agreed the Solicitor had sufficient evidence for a court to find Platinum Plus constituted a public nuisance.  Platinum Plus agreed to close its business for six months, reopen subject to extensive monitoring, and pay a substantial fine.  The 2015 Consent Order also expressly incorporated and reaffirmed the terms and conditions of the 2002 Consent Order.

In 2016—only a few months after Platinum Plus reopened—the Solicitor filed a verified petition seeking contempt findings against Platinum Plus for violations of the 2015 Consent Order.  This petition resulted in another order being entered on the caption of the 2015 nuisance action.  In that order (filed July 27, 2016), the circuit court ruled the Solicitor presented sufficient evidence of violations of the 2015 Consent Order to justify a finding of criminal and/or civil contempt.  The circuit court imposed monetary sanctions, shuttered Platinum Plus's business operations for an additional six months, and extended the mandatory monitoring requirements.  The defendants appealed, and the court of appeals affirmed.  *State v. Elephant, Inc.*, 2019-UP-290 (S.C. Ct. App. filed Aug. 14, 2019).

### D. Greenville Bistro Leases the Property

Platinum Plus abandoned the property shortly after being shut down for the second time.  On December 5, 2016, Frontage Road Associates—the owner of the property—moved for the circuit court to release the property from all orders pertaining to Platinum Plus because Frontage Road had entered into a new lease agreement with Greenville Bistro.  Frontage Road submitted an affidavit from Jason C. Mohney, the principal of Greenville Bistro, who swore Platinum Plus and Greenville Bistro were unconnected and "completely separate" businesses.

In early 2017, and again under the 2015 nuisance action caption, Frontage Road moved pursuant to section 15-43-80 of the South Carolina Code to have the property released from the 2002 Consent Order and the 2015 Consent Order. Frontage Road argued Platinum Plus had abandoned the premises, thereby abating any nuisance arising from its activities on the premises. Again, Greenville County was not a party to the nuisance action. In its February 10, 2017 order releasing the property from the restrictions, the circuit court noted, "Greenville Bistro, LLC is seeking to commence operations of a similar business as Platinum Plus in the location." The circuit court found there was no connection between Platinum Plus and Greenville Bistro, and the circuit court cautioned, "[I]n the event that Greenville Bistro, or any other adult entertainment venue, commences operating at the location, full and complete compliance with all applicable laws, ordinances, etc. is expected." That same day, Greenville Bistro filed a commercial zoning application with the County to open a restaurant at the property.

### E. The County Adopts Ordinance No. 4869

On February 21, 2017, the County adopted Ordinance No. 4869 to amend a small portion of the Sexually Oriented Business Code. The amendment changed the definition of "adult cabaret" to include businesses that regularly feature persons appearing in a "state of semi-nudity." Ordinance No. 4869 also included a new definition of "semi-nude."

> (13) *Semi-nude* or a *state of semi-nudity* means the showing of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point, or the showing of the male or female buttocks. This definition shall include the lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breasts exhibited by a bikini, dress, blouse, shirt, leotard, or similar wearing apparel provided the areola is not exposed in whole or in part.

As noted above, Ordinance No. 2673 classified adult cabarets as those establishments regularly featuring, among other things, persons appearing in a "state of nudity." Therefore, Ordinance No. 4869, by extending the classification of adult cabarets to establishments featuring persons appearing in a "state of semi-nudity," placed a greater restriction upon Greenville Bistro's desired business model and the business model Platinum Plus was informed it could legally employ under the 2002 Consent Order.

Importantly, however, the adoption of Ordinance No. 4869 did not disturb other classifications of adult cabarets as set forth in Ordinance No. 2673. Specifically, as we noted above in section II.A., and as we will discuss below in section III.B., a prohibited "adult cabaret" includes an establishment that regularly features live performances characterized by "specified sexual activities." Adult cabarets are not permitted in the location where Bucks operates.

The day after Ordinance No. 4869 was enacted, the County approved Greenville Bistro's commercial zoning application to operate a restaurant. On February 24, 2017, the County wrote Mr. Mohney of Greenville Bistro a letter to discuss "the possible operation of a business at [the property]" and to provide Greenville Bistro with some information regarding the ordinances and zoning regulations in play. The County informed Greenville Bistro the property is located in an S-1 zoning district and that Ordinance Nos. 2673 and 4869 apply. The County also explained the ordinances require sexually oriented businesses—and an adult cabaret is a sexually oriented business—to be at least 1,500 feet from certain properties.

### F. Greenville Bistro Opens Bucks Racks & Ribs

On March 27, 2017, the County issued Greenville Bistro a certificate of use and occupancy to operate a restaurant at the property. Greenville Bistro opened Bucks Racks & Ribs, but not long after, the County suspected Bucks was operating as an adult cabaret in violation of Ordinance Nos. 2673 and 4869. Following a May 12, 2017 inspection, the County issued two citations to Greenville Bistro. The County also issued Greenville Bistro an "Official Notice" in which the County declared, "The Certificate of Occupancy is for a restaurant and does not have live entertainment. All patrons/personnel must be properly clothed. No swimsuits etc. The use of the structure is for a restaurant only. Cease all use for live entertainment."

As summarized below in section III.B., the record contains testimony from a private investigator and two undercover Greenville County Sheriff's deputies who visited the property on later dates and detailed their experiences at Bucks. The testimony included descriptions of the lap dances[1] the witnesses paid for and

---

[1] "Lap dancing" is defined as the "sexually stimulating erotic writhing and rubbing of a woman's posterior against the lap of a seated, male customer." Richard A. Spears, *McGraw-Hill's Dictionary of American Slang and Colloquial Expressions* 211 (4th ed. 2006).

received, and the testimony included their observations of the interactions between the dancers and other patrons.

### G. The Current Litigation

Greenville Bistro commenced the instant action against the County in May 2017, seeking declaratory and injunctive relief. Greenville Bistro argued injunctive relief was appropriate for two reasons: (1) the County was violating the 2002 Consent Order and (2) Ordinance No. 4869 violates Greenville Bistro's right to free speech. The County answered Greenville Bistro's complaint and counterclaimed for injunctive relief of its own on June 14, 2017. The County argued it was entitled to injunctive relief because Greenville Bistro was illegally operating (1) a sexually oriented business and (2) a nightclub in an S-1 zoning district.

On June 16, 2017, the circuit court (Judge Stilwell) heard Greenville Bistro's motion for a temporary injunction but continued the County's motion. The circuit court issued an order temporarily enjoining the County from enforcing Ordinance No. 4869 against Greenville Bistro. The County appealed to the court of appeals in 2017.

On March 13, 2018, the circuit court (Judge Gravely) convened a hearing on the County's pending motion for injunctive relief, received testimony, but ruled it did not have jurisdiction to rule on the County's motion because any grant of such relief would impact the County's pending appeal regarding Ordinance No. 4869. The County appealed this ruling to the court of appeals in 2018. In 2020, upon request of the court of appeals, this Court accepted a transfer of both appeals. This opinion resolves both appeals.

### III.

The issues are as follows:

(1) Did the circuit court err in granting Greenville Bistro's motion for temporary injunctive relief as to Ordinance No. 4869?

(2) Did the circuit court err in refusing to rule upon the County's motion for temporary injunctive relief as to Ordinance No. 2673, and if so, is the County entitled to temporary injunctive relief?

### A. The County's Appeal of the Circuit Court's Grant of Injunctive Relief to Greenville Bistro as to Ordinance No. 4869

The County argues the circuit court erred in temporarily enjoining enforcement of Ordinance No. 4869.  We agree.

"The granting of temporary injunctive relief is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 601, 553 S.E.2d 110, 121 (2001).  "An abuse of discretion occurs where the trial court is controlled by an error of law or where the trial court's order is based on factual conclusions without evidentiary support." *Id.*

"An injunction is a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff." *Scratch Golf Co. v. Dunes W. Residential Golf Props., Inc.*, 361 S.C. 117, 121, 603 S.E.2d 905, 907 (2004).  "The facts alleged must be sufficient to support a temporary injunction and the injunction must be reasonably necessary to protect the rights of the moving party." *Atwood Agency v. Black*, 374 S.C. 68, 72, 646 S.E.2d 882, 884 (2007).  "The purpose of an injunction is to preserve the status quo and prevent possible irreparable injury to a party pending litigation." *AJG Holdings, LLC v. Dunn*, 382 S.C. 43, 51, 674 S.E.2d 505, 509 (Ct. App. 2009).

"Generally, for a preliminary injunction to be granted, the plaintiff must establish that: (1) he would suffer irreparable harm if the injunction is not granted; (2) he will likely succeed on the merits of the litigation; and (3) there is an inadequate remedy at law." *Id.* at 51, 674 S.E.2d at 508.  We hold Greenville Bistro did not establish it was likely to succeed on the merits of its claim.

### 1. The Circuit Court Hearing

The circuit court heard Greenville Bistro's motion for temporary injunctive relief in June 2017.  In spite of Mr. Mohney's affidavit swearing on behalf of Greenville Bistro that Greenville Bistro and Platinum Plus were completely separate entities, Greenville Bistro argued to the circuit court that it was a successor corporation to Platinum Plus and that the County was violating the previous court orders concerning the property (especially the 2002 Consent Order).  Greenville Bistro argued the prior court orders define the legally acceptable business model that can be employed at the property.  Greenville Bistro argued the County's adoption of Ordinance No. 4869 effectively vitiated the 2002 Consent Order.  Greenville Bistro argued, "We want to operate the same business that was granted the rights given to the predecessor under the 2002 order."

Greenville Bistro also argued the pertinent ordinances violate its First Amendment rights. Finally, Greenville Bistro claimed enforcement of Ordinance No. 4869 would be inequitable because the timing of the County's adoption of the ordinance was highly suspect. On that point, Greenville Bistro argued the County did not consider adopting Ordinance No. 4869 until after Greenville Bistro leased the property, applied for a liquor license, and began the process of becoming a supposed successor to Platinum Plus under the 2002 Consent Order.

## 2. The Circuit Court's July 2017 Order

Citing Mr. Mohney's affidavit, the circuit court rejected Greenville Bistro's argument that it was a successor business to Platinum Plus. However, the circuit court temporarily enjoined the County from enforcing Ordinance No. 4869 against Greenville Bistro. The circuit court—in cursory fashion—addressed the necessary elements to be satisfied before issuing a temporary injunction.

Regarding the element of irreparable harm, the circuit court found, "[Greenville Bistro] may have a complaint as to the adaption [sic] of Ordinance 4869 soon after the issuance of the February 2017 Order. In keeping with established law, [Greenville Bistro] would suffer irreparable harm if the subject ordinance abridges its constitutional freedom of expression." When discussing Greenville Bistro's likelihood of success on the merits, the circuit court—without explanation—found, "Greenville Bistro has met its burden with respect to the issue of enforcement of Ordinance 4869. . . . The Court's decision is based solely on the moving party's alleged facts without regard to the ultimate merits of the case." When discussing whether Greenville Bistro had an adequate remedy at law, the circuit court found, "With regard to the enforcement of Ordinance 4869, [Greenville Bistro has] no adequate remedy at law because [the County's] efforts to regulate [Greenville Bistro's] business threaten [Greenville Bistro] with the loss of constitutionally protected rights and freedoms."

## 3. Analysis

Because injunctive relief is a drastic remedy, a lower court must clearly communicate the reasoning behind its decision to issue an injunction. *See* Rule 65(d), SCRCP ("Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ."). It is difficult to tell whether the circuit court based its finding of likelihood of success on the merits upon constitutional grounds, equitable grounds or both. We will address both points.

## a. Did Greenville Bistro establish a likelihood of success on the merits of its First Amendment claim?

"A trial court may consider a case's merit to the extent necessary to determine whether a temporary injunction should issue." *Curtis v. State*, 345 S.C. 557, 577, 549 S.E.2d 591, 601 (2001). "In determining whether a temporary injunction should issue, the trial judge should not consider the merits of the case, except as they may enable the trial court to determine whether a prima facie showing has been made." *Id.* at 576, 549 S.E.2d at 601. "When a prima facie showing has been made entitling the plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate termination of the case on the merits." *Id.* "However, when a plaintiff's prima facie case depends on an allegation that a statute [is] unconstitutional, the trial judge must consider the matter in determining the reasonable necessity for a temporary injunction." *Id.*

"The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981). Like other legislative enactments, this Court affords "ordinances regulating sexually oriented businesses a presumption of constitutionality which the attacking party has the burden of overcoming." *Harkins*, 340 S.C. at 621, 533 S.E.2d at 894; *Centaur, Inc. v. Richland Cnty.*, 301 S.C. 374, 377, 392 S.E.2d 165, 167 (1990) ("Our decisions have generally applied [a presumption of constitutionality] even when an ordinance is challenged on First Amendment grounds."); *Rothschild v. Richland Cnty. Bd. of Adjustment*, 309 S.C. 194, 198, 420 S.E.2d 853, 856 (1992).

Greenville Bistro argues any presumption of constitutionality afforded to Ordinance No. 4869 under South Carolina law is inappropriate because it brought a federal civil rights claim pursuant to 42 U.S.C. § 1983,[2] which Greenville Bistro

---

[2] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. Pursuant to *Howlett v. Rose*, 496 U.S. 356, 367 (1990), the circuit court has concurrent jurisdiction with the United States District Court over Greenville Bistro's federal civil rights claim.

claims triggered the application of federal law and invoked the circuit court's concurrent federal jurisdiction. Greenville Bistro cites *Schad* in support of its argument that Ordinance No. 4869 should be presumed unconstitutional. 452 U.S. at 67 (Blackmun, J., concurring) ("[T]he presumption of validity that traditionally attends a local government's exercise of its zoning powers carries little, if any, weight where the zoning regulation trenches on rights of expression protected under the First Amendment."); *see Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348, 1352 (9th Cir. 1985) ("Regardless of the weight the trial court chose to afford to Adultworld's evidence of lack of relocation sites, where a plaintiff makes a prima facie showing of infringement of First Amendment rights, the presumption of validity of a zoning ordinance disappears."); *Messiah Baptist Church v. Cnty. of Jefferson*, 859 F.2d 820, 833 (10th Cir. 1988) (McKay, J., dissenting); *Nat'l Ass'n for Advancement of Colored People v. City of Philadelphia*, 834 F.3d 435, 443 (3d Cir. 2016); *Ben Rich Trading, Inc. v. City of Vineland*, 126 F.3d 155, 160 (3d Cir. 1997); *City of Watseka v. Ill. Pub. Action Council*, 796 F.2d 1547, 1551 (7th Cir. 1986).

Regardless of whether the ordinance is presumptively constitutional (under the South Carolina line of cases) or presumptively unconstitutional (under the federal line of cases), we hold Greenville Bistro has not established it is likely to succeed on the merits of its claim that Ordinance No. 4869 is an unconstitutional violation of its right to freedom of speech and expression.

"As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002). First Amendment protections extend to non-obscene, sexually explicit material. *See Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 69-71 (1976); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49 (1986). However, "nude dancing is only marginally of First Amendment value and only within the outer ambit of the First Amendment's protection." *Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 744 (4th Cir. 2010) (internal quotation marks and citations omitted).

It is well-settled that sexually oriented businesses can have negative secondary effects on their surrounding communities. *See Young*, 427 U.S. at 68-69. Zoning restrictions are often implemented to balance the free speech concerns with the regulation of secondary effects. *Harkins*, 340 S.C. at 613, 533 S.E.2d at 889-90. In *Harkins*, we explained:

> Zoning laws that have the effect of restricting freedom of expression without regard to the content of the speech are referred to as "content neutral" laws. Zoning ordinances merely restricting the location of

adult businesses without banning them altogether are considered content neutral as long as they are based on their prevention of the harmful secondary effects the Supreme Court has noted these sexually oriented businesses may cause. Since these zoning laws are considered content neutral, they are evaluated as "time, place, and manner" regulations for purposes of determining their validity under the First Amendment. Permissible time, place, and manner restrictions are justified by a substantial governmental interest unrelated to free speech and allow[] for adequate alternative avenues of communication of the sexually explicit material. Therefore, sexually oriented business regulations will be upheld if they are designed to serve the substantial governmental interest of preventing harmful secondary effects and they allow for reasonable avenues of communication.

*Id.* at 613-14, 533 S.E.2d at 890 (internal citations omitted); *see Centaur, Inc.*, 301 S.C. at 379-80, 392 S.E.2d at 168-69. As discussed above, this Court has previously upheld the constitutionality of location restrictions imposed upon sexually oriented businesses by Ordinance No. 2673. *See Harkins*, 340 S.C. at 620-21, 533 S.E.2d at 893; *Kenwood*, 353 S.C. at 168-71, 577 S.E.2d at 433-35.

We hold Ordinance No. 4869 is a valid "time, place, and manner" regulation because it serves the substantial governmental interest of preventing harmful secondary effects and provides reasonable alternative avenues of communication for adult businesses. Like Ordinance No. 2673—discussed in *Harkins* and *Kenwood*— Ordinance 4869 does not constitute an outright ban on expression; instead, it functions as an amendment to the ordinance regulating the location of sexually oriented businesses. Ordinance No. 4869 amended Ordinance 2673's definition of an adult cabaret to include establishments that regularly feature persons appearing in a "state of semi-nudity." Ordinance 4869 also revised the definition of "semi-nude." These were permissible actions by the County.

In enacting Ordinance No. 4869, the County reaffirmed the findings set forth in Ordinance No. 2673, explaining the purpose of the Sexually Oriented Business Code is to regulate sexually oriented businesses—not to impose limitations or restrictions on the content of communicative materials but to promote the health, safety, morals, and general welfare of Greenville County citizens. *See Evans*, 612 F.3d at 742 ("[W]hile the government must 'fairly support' its policy, it need not settle the matter beyond debate or produce an exhaustive evidentiary demonstration." (quoting *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438 (2002))). Ordinance 4869 highlighted the numerous negative effects associated with sexually oriented businesses and stated:

Each of the foregoing negative secondary effects constitutes a harm which the County continues to have a substantial government interest in preventing and/or abating. . . . Additionally, the county's interest in regulating adult entertainment establishments extends to preventing future secondary effects of either current or future adult entertainment establishments that may locate in the county.

Further, Ordinance No. 4869 does not regulate sexually oriented businesses out of existence because the County provides reasonable alternative avenues of communication. The County's GIS Division Manager testified that although a sexually oriented business is prohibited from operating at this particular location, there are 89 zoned parcels and thousands of unzoned parcels that meet the location requirements for sexually oriented businesses in the County. *See Renton*, 475 U.S. at 54 ("[T]he First Amendment requires only that [the city] refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city[.]"); *Harkins*, 340 S.C. at 621, 533 S.E.2d at 893 ("Since the trial court found that nine S-1 sites are available for relocation, more than enough S-1 properties exist where six Adult Businesses could relocate.").

Other courts have upheld time, place, and manner ordinances with very similar, if not identical, definitions of semi-nudity. *See MJJG Rest. LLC v. Horry Cnty.*, 102 F. Supp. 3d 770, 778 n.6 (D.S.C. 2015); *Richland Bookmart, Inc. v. Knox Cnty.*, 555 F.3d 512, 519 (6th Cir. 2009); *Oasis Goodtime Emporium I, Inc. v. City of Doraville*, 773 S.E.2d 728, 731 n.4 (Ga. 2015); *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 294-95 (6th Cir. 2008).

Therefore, to the extent the circuit court's ruling was based on its conclusion that Ordinance No. 4869 is likely an unconstitutional infringement of Greenville Bistro's First Amendment rights, we hold the grant of injunctive relief was error, as Greenville Bistro failed to prove it would likely succeed on the merits of its First Amendment claim.[3]

---

[3] We need not consider whether Greenville Bistro established the elements of irreparable harm or inadequate remedy at law. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

**b. Did Greenville Bistro establish Ordinance No. 4869 is likely invalid because of the County's allegedly inequitable adoption of that ordinance?**

Greenville Bistro argues the circuit court's ruling regarding the likelihood of success on the merits was not only based on constitutional grounds, but also on the ground that Ordinance No. 4869 was likely invalid for equitable reasons. The circuit court's order can be interpreted as Greenville Bistro contends. When discussing the procedural history of the case, the circuit court explained:

> That [February 2017] Order simply allows Greenville Bistro to open and operate a "similar business" to that of the former tenant. . . . Twelve days after [the circuit court] entered its Order that had the effect of allowing Greenville Bistro to open and operate, the County adopted Ordinance 4869, which purports to amend the definition of an adult cabaret to regulate establishments offering "semi-nude" entertainment. Once Greenville Bistro commenced its operations, [the County] believed those operations were in violation of various County regulations and ordinances and began to enforce those regulations against [Greenville Bistro].

When addressing whether Greenville Bistro suffered irreparable harm, the circuit court stated, "[Greenville Bistro], however, may have a complaint as to the adaption [sic] of Ordinance 4869 soon after the issuance of the February 2017 Order."

To the extent the circuit court based its conclusion that there was a likelihood of success on the merits arising from the inequitable timing of the adoption of Ordinance No. 4869, the circuit court plainly erred in two respects. The first point of error centers upon the circuit court's mischaracterization of the February 2017 order (concluding the nuisance claim brought by the State against Elephant, Inc.) as binding upon the County. That characterization is clearly erroneous as the County was not a party to the nuisance litigation. In spite of this clear fact, Greenville Bistro argues in its brief that "Greenville County acted inequitably by entering into a Consent Order permitting a 'similar business' to operate at the subject location and then vitiating that Consent Order by passing Ordinance 4869." We flatly reject that argument, as the County was not a party to the nuisance litigation resulting in that consent order.

The second point of the circuit court's error centers upon its finding that "[The February 2017] Order simply allows Greenville Bistro to open and operate a 'similar business' to that of [Platinum Plus]." We disagree. Nothing in the February 2017

order allows anything of the sort. The February 2017 order merely notes that Greenville Bistro, a new tenant with no connection to Platinum Plus, "is seeking to commence operations of a similar business as Platinum Plus in the location."

Greenville Bistro has not demonstrated that it would likely succeed on the merits of its claim that the County inequitably adopted Ordinance No. 4869. Indeed, there is a "familiar principle of constitutional law that [the] Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."[4] *See Renton*, 475 U.S. at 48.

In *D.G. Restaurant Corp. v. City of Myrtle Beach*, the Myrtle Beach city council, in response to the anticipated establishment of a topless nightclub within the city, adopted an ordinance prohibiting a business from displaying nudity within 500 feet of certain areas. 953 F.2d 140, 141 (4th Cir. 1991). The district court ruled the ordinance was intended to prevent the business from opening and operating, and was "attempting to restrict the message purveyed by topless entertainment[,]" thus rendering the ordinance a content-based violation of the First Amendment. *Id.* at 143. The Fourth Circuit reversed, holding the ordinance was not an unconstitutional regulation of the plaintiff's intended message but was rather a legitimate attempt to regulate physical conduct for some other important governmental purpose. The Fourth Circuit noted, "That it took D.G. Restaurant's announced plans to spur the city to this realization does not in any way impute illicit or unconstitutional motives to the Myrtle Beach city council." *Id.* at 146. The fact that a sexually oriented business has prompted ensuing regulation does not mean the regulation is targeted at the "eradication of any erotic message" the business may convey. *Id.*

Similarly, in *Cricket Store 17, LLC v. City of Columbia*, Taboo—a sexually oriented business—received its business license from the City of Columbia and opened a small retail store. 97 F. Supp. 3d 737, 742 (D.S.C. 2015), *aff'd*, 676 F. App'x 162 (4th Cir. 2017). One month after Taboo opened, Columbia amended its sexually oriented business ordinance, which prohibited Taboo from operating at its current location. Since Taboo was an existing nonconforming business, it was given two years to operate to allow it to recoup investment and relocation expenses. At the end of the amortization period, Taboo sued to set aside the ordinance on First Amendment free speech grounds.

---

[4] *But see United States v. O'Brien*, 391 U.S. 367, 383-84 & n.30 (1968) (noting that courts should look at legislators' actual motives in determining whether a statute is a bill of attainder).

The district court granted summary judgment to the City of Columbia, upholding the ordinance as a valid time, place, and manner regulation. The district court rejected Taboo's argument regarding the suspect timing of the enactment of the ordinance. The district court explained, "[T]he fact that Taboo's opening spurred the City into action is not controlling, as this does not demonstrate that a ban on Taboo's erotic message was a motive for the ordinances." *Id.* at 746.

The circuit court erred in concluding Greenville Bistro was entitled to a temporary injunction on the ground that the timing of the adoption of Ordinance No. 4869 was suspect. Greenville Bistro did not establish it was likely to succeed on the merits of this claim.[5]

### c. Is Greenville Bistro a Successor Entity to Platinum Plus?

Greenville Bistro claims the 2002 Consent Order between the County and Platinum Plus allows it to operate Bucks under its current business model because it is a successor entity to Platinum Plus. Greenville Bistro argued to the circuit court, "We want to operate the same business that was granted the rights given to the predecessor under the 2002 order." This argument is flatly meritless and was correctly rejected by the circuit court. Greenville Bistro is not a successor entity to Platinum Plus.

For the foregoing reasons, we reverse the circuit court's grant of a temporary injunction to Greenville Bistro, and we dissolve the injunction.

### B. The County's Appeal of the Circuit Court's Denial of Temporary Injunctive Relief to the County

By the time the circuit court convened a hearing of the County's motion for temporary injunctive relief in March 2018, the County's appeal of the July 2017 order enjoining its enforcement of Ordinance No. 4869 was several months old. The County explained to the circuit court that it was not seeking relief under Ordinance No. 4869 but was instead seeking relief under separate ordinance provisions. The County presented testimony as summarized below. The circuit court declined to address the merits of the County's argument, finding the crux of the County's motion involved issues already on appeal. Citing Rules 205 and 241 of the South Carolina Appellate Court Rules, the circuit court concluded that ruling on the motion would interfere with the court of appeals' exclusive jurisdiction. We disagree with the

---

[5] We need not address the elements of irreparable harm and inadequate remedy at law. *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598.

circuit court and hold it had jurisdiction to rule upon the County's motion.  We also hold the County is entitled to temporary injunctive relief.

### 1. Jurisdiction

We first address Greenville Bistro's argument that because the County did not specifically identify the jurisdictional question as an issue on appeal in its brief, the issue is unpreserved.  *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").  We disagree with Greenville Bistro.  *See Herron v. Century BMW*, 395 S.C. 461, 466, 719 S.E.2d 640, 642 (2011) ("When an issue is not specifically set out in the statements of issues, the appellate court may nevertheless consider the issue if it is *reasonably clear* from an appellant's arguments.").  The County's brief primarily addresses the merits of its claim for injunctive relief, but the brief contains argument against the circuit court's jurisdictional ruling.  The brief sufficiently ensures the Court does not have to "grope in the dark" to find the County's jurisdictional argument. *See Forest Dunes Assocs. v. Club Carib, Inc.*, 301 S.C. 87, 89, 390 S.E.2d 368, 370 (Ct. App. 1990) ("Every ground of appeal ought to be so distinctly stated that the reviewing court may at once see the point which it is called upon to decide without having to 'grope in the dark' to ascertain the precise point at issue.").

Turning to the merits of the jurisdictional issue, Rule 205, SCACR, explains the effect an appeal has on a lower court's jurisdiction:

> Upon the service of the notice of appeal, the appellate court shall have exclusive jurisdiction over the appeal; the lower court or administrative tribunal shall have jurisdiction to entertain petitions for writs of supersedeas as provided by Rule 241.  <u>Nothing in these Rules shall prohibit the lower court, commission or tribunal from proceeding with matters not affected by the appeal</u>.

Rule 205, SCACR (emphasis added); *see* Rule 241(a), SCACR ("The lower court or administrative tribunal retains jurisdiction over matters not affected by the appeal including the authority to enforce any matters not stayed by the appeal."); *Stokes-Craven Holding Corp. v. Robinson*, 416 S.C. 517, 532-34, 787 S.E.2d 485, 493-94 (2016); *Tillman v. Oakes*, 398 S.C. 245, 254-56, 728 S.E.2d 45, 50-51 (Ct. App. 2012).

As extensively discussed above, the circuit court order granting Greenville Bistro's motion for injunctive relief centered upon the constitutionality of the "semi-nudity" provision in Ordinance No. 4869 and the allegedly suspect timing of the

adoption of that ordinance. Importantly, in addition to enjoining enforcement of Ordinance No. 4869, the circuit court ruled, "Greenville Bistro must comply with any and all applicable laws or ordinances existing at the time of issuance of the February 9, 2017 Consent Order." To that end, the County's motion for injunctive relief was based upon the grounds that Greenville Bistro was violating three different ordinance provisions. First, the County argued Greenville Bistro violated Ordinance No. 2673 because Bucks was a sexually oriented business, specifically an adult cabaret, in which persons are regularly featured with bare female breasts and buttocks. The County asserted pasties and small bikini bottoms are insufficient forms of coverage to avoid the ordinance's definition of "nudity." Second, the County argued Greenville Bistro violated Ordinance No. 2673 because Bucks regularly features live performances that are characterized by "specified sexual activities," which include "fondling or other erotic touching" and "simulated sex acts," as referenced in the testimony summarized below. The County argues this placed Bucks in the category of a prohibited "adult cabaret." Third, the County argued Greenville Bistro violated section 6.1 of the Zoning Ordinance because Bucks was illegally operating as a "nightclub."

The circuit court erred in ruling it did not have jurisdiction to address the merits of the County's motion for temporary injunctive relief. The circuit court's determination of whether the County was entitled to injunctive relief for the three foregoing reasons was not a matter affected by an appellate court's resolution of the validity of Ordinance No. 4869. None of the County's grounds for injunctive relief involve the content of Ordinance No. 4869, specifically its provisions concerning "state of semi-nudity" or "semi-nude."

## 2. Testimony at Hearing

Private investigator Steven Smith testified during the 2018 hearing that he visited Bucks, paid a cover charge, and walked into the main room, where there were five to seven dancers performing on stage showing their bare breasts (with "pasties" covering their nipples) and their buttocks covered by small bikini bottoms or thongs. Smith testified the dancers "simulated intercourse" and provocatively touched their breasts, buttocks, and vaginal areas. Smith testified patrons would walk up to the stage where dancers would put their crotches and buttocks in the patrons' faces. He testified the dancers were also giving patrons lap dances where there was "grinding" and "gyration," which Smith described as "motioning as if [the dancer and patron] were having sex." Smith testified the dancers would put their bare breasts and bare buttocks in the patrons' faces during lap dances. Private investigator Donald

Johnson, who worked with Smith, testified he also visited Bucks. His testimony largely mirrored that of Smith.

An undercover investigator from the Greenville County Sheriff's Office testified about his visits to Bucks. He testified that on the first night, after he paid a cover charge and sat down at a table with two other investigators, two female dancers immediately greeted them. He testified the dancers gave the two other investigators private dances and tried to talk the three of them into going into the Champagne Room for $850. He testified that after he declined the Champagne Room invitation, the two dancers gave him a "double private dance." He testified the dancers were "grinding" on him and allowed him to touch their bare breasts and exposed buttocks. He described these lap dances as "simulated sexual intercourse." He testified about his very similar observations when he and the other investigators returned the next night, including the additional lap dances they received in the Champagne Room.

### 3. Merits of the County's claim for temporary injunctive relief

At this point, we must decide whether we should address the merits of the County's claim for temporary injunctive relief or whether we should remand this issue to the circuit court. Ordinarily, a remand would be in order if there are fact-driven questions as to whether the moving party has established a likelihood of success on the merits, an inadequate remedy at law, and irreparable harm. However, we have held that these considerations do not apply when a city seeks an injunction to enforce an ordinance. *See City of Columbia v. Pic-A-Flick Video, Inc.*, 340 S.C. 278, 282, 531 S.E.2d 518, 521 (2000) ("In order for a city to get an injunction for a zoning violation [it] must show: (1) that it has an ordinance covering the situation; and (2) that there is a violation of that ordinance.").

A county may obtain injunctive relief to prevent violations of its ordinances. *See* S.C. Code Ann. § 6-29-950 (2004). Also, Article 13 of the Zoning Ordinance in this case provides the County may seek injunctive relief to enforce the provisions of the ordinance. The records in both appeals include the facts relevant to whether the County is entitled to a temporary injunction, so a remand is not warranted. The County contends several zoning violations entitle it to injunctive relief. We agree with the County that, at this stage, the County has presented sufficient proof that Bucks illegally operates in this location as an "adult cabaret."

Ordinance No. 2673 regulates the operation of sexually oriented businesses in the County. Although Ordinance No. 2673 allows sexually oriented businesses to operate within an S-1 district, those businesses cannot operate within 1,500 feet of, among other things, residential districts, churches, or licensed daycare facilities.

Bucks is in an S-1 district and falls within that 1,500-foot location restriction, so the question becomes whether Bucks is, as the County argues, a sexually oriented business. The ordinance lists eight types of businesses that are classified as sexually oriented businesses—one of which is an "adult cabaret." The ordinance defines an "adult cabaret," in pertinent part, as "a nightclub, bar, restaurant, or similar commercial establishment which regularly features . . . [l]ive performances which are characterized by . . . 'specified sexual activities' . . . ." As noted above, "specified sexual activities" are defined in the ordinance to include: "(1) the fondling or other erotic touching of human genitals, pubic region, buttocks, anus, or female breasts; (2) sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation, or sodomy; and (3) masturbation, actual or simulated."

The County has presented sufficient proof at this stage that Bucks illegally operates as an adult cabaret because it features live performances characterized by "specified sexual activities." The testimony of the private investigators and undercover deputy prove multiple instances of "specified sexual activities" occurring at Bucks: (1) the dancers "simulated intercourse" while dancing and provocatively touched their breasts, buttocks, and vaginal areas; (2) the dancers placed their breasts, crotches, and buttocks in patrons' faces, which constitute "sex acts, normal or perverted"; (3) the dancers simulated intercourse by giving lap dances, during which they would grind on patrons' crotches and allow patrons to touch and fondle their breasts and buttocks; and (4) the dancers "simulated masturbation" by touching and fondling their vaginal areas. The County is entitled to temporary injunctive relief on this basis.[6]

## Conclusion

We reverse the circuit court's grant of injunctive relief to Greenville Bistro and dissolve that injunction. We reverse the circuit court's ruling that it did not have jurisdiction to rule upon the County's motion for injunctive relief. We hold the County has established it is entitled to temporary injunctive relief. We remand to the circuit court with instructions to enter the temporary injunction and to proceed with all haste to the resolution of this case on the merits.

---

[6] We need not consider whether Bucks illegally operates as a "nightclub" or whether the dancers' activities violate the "nudity" or "semi-nudity" provisions of the ordinances. *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598.

**REVERSED AND REMANDED.**

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**